In re Paul W. OLIVIERI, Debtor.

Paul W. Olivieri and Coventry
Credit Union, Plaintiffs,

v.

Generali Insurance Co.; International
Excess & Treaty Managers, Inc.; 1532
Main Street, LLC.; and Gencorp In-
surance Group, Inc., Defendants.

Bankruptcy No. 97–14387.
Adversary No. 98–1152.

United States Bankruptcy Court,
D. Rhode Island.

Aug. 6, 1999.

Janet J. Goldman, Warwick, Rhode Island, for Paul W. Olivieri.

Louis A. Geremia, Geremia & DeMarco Ltd., Providence, Rhode Island, for Coventry Credit Union.

John G. Hines, Richard L. Patz, Hines & Patz, Providence, Rhode Island, for Generali Insurance Co. and International Excess & Treaty Managers, Inc.

Heath S. Comley, Lynch, Greenfield & Page, Providence, Rhode Island, for 1532 Main Street, LLC.

James T. McCormick, Providence, Rhode Island, for Gencorp Insurance Group, Inc. and 1532 Main Street, LLC.

### DECISION & ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Plaintiffs' Motion for Partial Summary Judgment against Generali Insurance Co. and International Excess & Treaty Managers, Inc. Upon consideration of the papers and the arguments and for the reasons discussed below, the Plaintiffs' Motion for Partial Summary Judgment is GRANTED as to liability.

### BACKGROUND

Paul Olivieri owns real estate located at 1532 Main Street, Coventry, Rhode Island. The property is encumbered by a first mortgage to Coventry Credit Union (hereinafter "CCU") in the amount of $200,000. On October 22, 1997, Olivieri filed a Chapter 13 case and plan under which the real estate was to be sold to the Defendant, 1532 Main Street, LLC, for $500,000. The proceeds would be used to pay CCU in full, as well as a 100% dividend to unsecured creditors. The Purchase and Sale Agreement required 1532 Main Street to provide fire insurance covering the subject property.

On January 27, 1998, an insurance binder was issued by Generali Insurance Co. (hereinafter "Generali") indicating that the property was insured for $200,000, and listing CCU as mortgagee. On September 14, 1998, the main building was destroyed by fire, and Generali denied coverage alleging that the policy had been canceled in July 1998. CCU contends that: (1) it never received notice of the cancellation; and (2) Generali failed to effectively cancel the policy under Rhode Island law because it failed to send the notice of cancellation to CCU via certified mail, return receipt requested, pursuant to R.I.Gen.Laws § 27–5–3.4. Generali concedes that it did not send the cancellation notice to CCU via certified mail, but argues that its notice to CCU is valid under the policy and under Rhode Island insurance laws. Generali also argues that the Debtor has no standing to have this claim adjudicated before the bankruptcy court, because the Debtor is not a party to the insurance policy.

### DISCUSSION

In considering requests for summary judgment, courts in this Circuit use the following guidelines:

> [S]ummary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obligated to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality . . .

that support his position.... When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant.... This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record.

*Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir.1994) (citations omitted) (footnote omitted). In this case there are no genuine issues of material fact in dispute and the matter is ripe for partial summary judgment on the issue of liability.

█ Initially, Generali argues that the Debtor lacks standing to bring this adversary proceeding on the ground that the Debtor is not a party to the insurance policy. I disagree with this argument for the reason that, in a bankruptcy context, the outcome of this (related to) litigation clearly will affect the rights of creditors. If Generali is liable to CCU under the policy, the secured claim of CCU against the estate would be satisfied and the real property would be unencumbered, allowing it to be sold with all of the proceeds available to general creditors. *See Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara County Child Care Consortium)*, 223 B.R. 40, 45 (1st Cir. BAP 1998) ("The jurisdiction of the bankruptcy courts to hear related matters is broad but not unlimited.... There must be some nexus between the "related proceeding" and the title 11 case for the bankruptcy court to have subject matter jurisdiction.... Thus, '[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).

█ Additionally, the subject property is property of the bankruptcy estate, and the proceeds of any recovery under the policy are property of the estate. *See Plaza at Latham Assocs. v. Citicorp North America, Inc. (In re Interstate Dept. Stores, Inc.)*, 150 B.R. 507, 513 (N.D.N.Y. 1993). These factors are sufficient to confer standing upon the Debtor to have this matter adjudicated in this forum.

The substantive dispute centers around the notice required to effectuate cancellation of the policy, under R.I.Gen.Laws § 27-5-3.4. This section states:

(a) A company issuing any policy of insurance which is subject to cancellation or nonrenewal by the company shall effect cancellation or nonrenewal by serving the notice thereof provided by the policy. That notice shall be delivered in hand to the named insured, or be left at his or her last address as shown by the company's records, or, if its records contain no last address, at his or her last business, residence, or other address known to the company, or be forwarded to that address by certified mail, return receipt requested. A return receipt from the United States postal service showing receipt of the notice at the address of the insured stated in the policy shall be sufficient proof of notice. If the company does not receive a return receipt from the United States postal service within ten (10) days, then the company may forward the notice by first class mail and maintain proof of mailing of the notice to the insured in the ordinary course of the insurer's business, and this proof of mailing shall be sufficient proof of notice.

(b) If a policy is made payable to a mortgagee or any person other than the named insured, notice shall be given as provided in subsection (a) to the payee as well as to the named insured.

R.I.Gen.Laws § 27-5-3.4. Generali, focusing only on the first sentence of the statute, argues that cancellation is effective "by serving the notice thereof provided by

the policy." The cancellation language in the policy mirrors the language of R.I.Gen. Laws § 27–5–3 which provides:

> The form of the standard fire insurance policy of the state of Rhode Island ... shall be as follows:
>
> ...
>
> Mortgagee interests and obligations
>
> If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, that interest in this policy may be cancelled by giving to that mortgagee a ten (10) days' written notice of cancellation.

R.I.Gen.Laws § 27–5–3, lines 68–73; *see also* Joint Pre–Trial Order, Docket No. 10, Defendant's Exhibit 2, Policy. Generali argues that because it mailed CCU a notice of cancellation (via regular mail) at least thirty days prior to the cancellation, it has satisfied the requirements of the policy and Rhode Island law. It also argues that the imposition of a requirement that the cancellation notice be mailed via certified mail creates an irreconcilable conflict between Sections 27–5–3 and 27–5–3.4.

██ Generali's arguments are puzzling, and they ignore the principles of conventional statutory construction. The First Circuit Court of Appeals has stated: " 'the task of interpretation begins with the text of the statute itself, and statutory language must be accorded its ordinary meaning.' " *In re Juraj J. Bajgar*, 104 F.3d 495, 497 (1st Cir.1997), *quoting Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 706 (1st Cir. 1992). Wherever possible, statutes should be construed in a commonsense manner, avoiding absurd or counterintuitive results. *Petitioning Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1237 (1st Cir.1997). Reading Section 27–5–3.4 in such a manner, we understand the first sentence as governing the *form* of the notice of cancellation, and the balance of the section governing the manner in which the cancellation notice must be delivered

to the insured and the mortgagee. This interpretation gives effect to all of the words in the statute and creates no conflict with Section 5–27–3, which regulates only the minimum form of the cancellation notice. Without question, the second sentence in 27–5–3.4 begins by saying "That notice shall be delivered...." The word "That" refers to the form of notice discussed in the prior sentence, while the words "*shall* be delivered" create a mandatory, affirmative duty on an insurer to deliver the notice of cancellation exactly as set out in the statute. The Notice in the first instance must be delivered in hand, "left" at the last known address of the insured or mortgagee, or be sent via certified mail return receipt requested. *See* R.I.Gen.Laws § 27–5–3.4(a) and (b). Generali did none of these three things, but merely sent by regular mail a notice of cancellation to CCU. Having failed to comply with Section 27–5–3.4, Generali's notice of cancellation was ineffective.

██ As an aside, even if the statute permitted the initial notice of cancellation to be sent to a mortgagee by regular mail (which it clearly does not), there are other problems with Generali's notice to CCU. According to Generali's Exhibit E to its Objection to Summary Judgment, notice was mailed to CCU at "Main St., Coventry, RI 02816." Exhibit E. Because it lacks a street number or other identifier for CCU, the address in the notice is incomplete and the notice is defective for that reason as well. While it is not the basis for the ruling herein, this defect could well be the reason for CCU's complaint that it never received notice of the cancellation.

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment is GRANTED. A status conference is scheduled for August 25, 1999, at 9:30 a.m., to determine whether an evidentiary hearing will be necessary on the issue of damages.