**In re Alfred FRIDGE, Debtor.**

**Bankruptcy No. 99–B–15431.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 22, 1999.

Robert Semrad, Erik A. Martin & Associates, Chicago, IL, for Movant or Plaintiff.

James B. Cavenaugh, Cavenaugh & Matek, P.C., Chicago, IL, for Respondent of Defendant.

Michael K. Desmond, Figliulo & Silverman, P.C., Chicago, IL.

Andrew J. Maxwell, Steven S. Potts, Law Offices of Andrew J. Maxwell, Chicago, IL.

Tom Vaughn, Chicago, IL, Chapter 13 Trustee.

### OPINION STANDING AS FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER,
Bankruptcy Judge.

Following trial held on Alfred Fridge's ("Debtor") Motion for Sanctions Pursuant to 11 U.S.C. § 362(h) against Coronet Insurance Group ("Coronet") and attorneys of the firm Cavenaugh & Matek, P.C. ("Cavenaugh"), including associate attorney Timothy Howe ("Mr. Howe") of that

firm, the Court now makes and enters Findings of Fact and Conclusions of Law. Pursuant thereto, the Motion is sustained and sanctions are separately ordered.

### Findings of Fact

On May 12th, 1999, Debtor filed his petition for relief herein under Chapter 13 of the Bankruptcy Code 11 U.S.C. § 101 et seq. Prior to that filing, Coronet had won a judgment against him in the Circuit Court of Cook County, Illinois. Also prior to the bankruptcy filing, on May 5th a citation summons to discover assets under 735 ILCS 5/2–1402 was issued and served on Debtor at the instance of Coronet and its counsel.

On May 12th, after service of the citation, Debtor paid $160 to Erik Martin, his bankruptcy counsel, to pay the bankruptcy court filing fee. The $160 was so used. Debtor obtained that money from his wife who is not a debtor here.

On May 27th, Coronet's case came for hearing in state court on return of the citation summons. On that date, the attorneys in the Cavenaugh firm were already aware of Debtor's bankruptcy, having received a notice from Debtor's bankruptcy counsel. Debtor appeared in state court as ordered by the citation summons, but without counsel. He was sworn in by a deputy clerk of the Circuit Court. The Cavenaugh attorney representing Coronet that day was Mr. Timothy Howe, a young lawyer then three years out of law school. He began questioning Debtor after the oath had been administered. As is the custom in that court, the questioning took place in a room outside the courtroom, but was nonetheless part of the interrogation under authority of the citation summons. Debtor testified that Mr. Howe asked him several questions that day about his finances, but Mr. Howe acknowledges only two questions by him: (1) Did you file bankruptcy? and (2) Did you pay any money to your attorneys after the citation was served and before filing of the bankruptcy? After Debtor responded affirmatively to

the first question, Mr. Howe nonetheless proceeded to ask the second. After Debtor responded affirmatively to the second question, Mr. Howe returned to the courtroom with Debtor and informed the state court judge that Debtor had paid $160 to his attorneys after service of the citation summons and before filing in bankruptcy. Mr. Howe asked the court's direction as to what to do at that point. Mr. Howe's conduct described here was fully in accord with Cavenaugh's office policy and its instructions as to how to proceed in situations of this kind as part of its aggressive collection efforts generally on behalf of clients.

The state court judge thereupon entered an order finding the following: That the citation was served prior to Debtor's bankruptcy filing and that funds in the amount of $160 were transferred to Debtor's counsel Erik Martin in violation of the citation's restraining effects under state law. The matter was continued for hearing on possible criminal contempt charges against Debtor stemming from that $160 payment.

Subsequent to entry of that order in state court, Debtor filed in this Court a Motion for Sanctions pursuant to 11 U.S.C. § 362(h) against Coronet and Cavenaugh's attorneys.

On June 17th, initial hearing on the Motion for Sanctions was held here after which the second question posed by Mr. Howe was found to have violated 11 U.S.C. § 362 and an Order was entered. The Order forbad Coronet and its counsel from attending any further state court sessions involving Debtor and also forbad Coronet and attorneys of the Cavenaugh firm from communicating further with the state court judge in any respect until further order of this Court so long as the bankruptcy case was pending. A further hearing as to whether the actions by Mr. Howe were a willful violation of the automatic stay that merited sanctions under 11 U.S.C. § 362(h) was set for trial to be held here at a later date.

On July 1st, Debtor appeared with his counsel Erik Martin for the contempt hearing in state court. That day, the judge there entered an order requiring Debtor as well as Erik Martin to appear on July 2nd for a hearing on whether or not both or either one of them should be held in criminal contempt.

On or about July 1st, Erik Martin retained Figliulo & Silverman, P.C. ("Figliulo") to represent him with respect to the criminal contempt proceeding scheduled for July 2nd in state court. Figliulo presented an emergency motion before Judge Wedoff of this Bankruptcy Court in the absence of the undersigned that day, seeking an order enjoining the state court proceeding. In the alternative, Figliulo sought a finding that the tendering of $160 to Erik Martin did not in fact violate the restraining provision of the citation order. Judge Wedoff denied the motion in part because he did not believe that he had authority to enter a restraining order against the state court. He deferred to the undersigned judge as to all other issues. That motion before Judge Wedoff was improvident and the attempt to obtain an injunction against the state court was not wellfounded.

In state court, a lawyer from the Figliulo firm filed a motion questioning jurisdiction of the state court over Erik Martin and also filed a limited special appearance for that purpose. On July 2nd, the hearing in state court on possible contempt charges against Debtor and Erik Martin was held. The state court judge entered an order concluding that there was no criminal contempt on the part of Debtor, holding that the filing fee paid by Debtor to his counsel Erik Martin was given to Debtor by a third party and therefore the citation lien did not extend to the funds. See 735 ILCS 5/2–1402(f). The court also found that Debtor's attorney, Erik Martin, had not engaged in any unethical or criminal conduct.

Debtor then filed affidavits in Bankruptcy Court in support of its pending Motion for Sanctions regarding his claim for damages, lost wages and out-of-pocket costs incurred in defending the citation. Cavenaugh lawyers filed Objection to Amounts Claimed by Debtor in Regard to Debtor's Motion for Sanctions. The hearing subsequently held herein considered those claims and objections.

Additional fact statements in the Conclusions of Law will stand as additional Findings of Fact, and any conclusions of law contained in the Findings of Fact will stand as additional Conclusions of Law.

### Conclusions of law
#### A. Jurisdiction

Jurisdiction lies under 28 U.S.C. § 1334 and the case has been referred here under Internal Operating Procedure 15(a) U.S.D.C., N.D. Ill., effective September 1, 1999. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is appropriate pursuant to 28 U.S.C. § 1409.

#### B. Background

This Debtor and other bankruptcy debtors served with citation notices under Illinois law have on occasion been subject to contempt proceedings in state court after paying something to their attorneys to cover the bankruptcy filing fee or representation fees of their counsel. Actions by creditor's counsel that lead to such proceedings can trigger and warrant motions in bankruptcy contending that conduct of the creditors and their counsel involved violations of the automatic stay imposed by 11 U.S.C. § 362(a). Consequently, this case focuses on an important interface between state and federal law, and some discussion of that interface is warranted.

Illinois law provides a mechanism by which a judgment creditor may initiate supplementary proceedings to discover assets of a judgment debtor, and to obtain those assets to satisfy the judgment. *Bloink v. Olson,* 265 Ill.App.3d 711, 714, 202 Ill.Dec. 760, 763, 638 N.E.2d 406, 408 (1994). To discover such assets, the creditor is permitted to conduct an examination

of a judgment debtor or any third party who might hold assets of the judgment debtor. Such proceedings are commenced by issuance of a citation summons by the court clerk. 735 ILCS 5/2–1402(a). The statute provides:

> A judgment creditor ... is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, ... and of compelling the application of nonexempt assets or income discovered toward the payment of the amount due under the judgment.

735 ILCS 5/2–1402(a).

Upon proper service of a citation summons, the judgment or balance due thereon becomes a lien against all nonexempt personal property "belonging to the judgment debtor in the possession or control" of the judgment debtor or third party. 735 ILCS 5/2–1402(m). A list of what constitutes personal property exempt from a judgment lien is contained in 735 ILCS 5/12–1001.

The citation summons may include a "restraining provision" authorized by 735 ILCS 5/2–1402(f)(1). The purpose underlying the restraining provision is to provide a means of forestalling the judgment debtor or a third party from frustrating the supplementary proceedings by disposing of debtor's assets before the judgment creditor has an opportunity to reach these assets. *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill.2d 307, 127 Ill.Dec. 952, 533 N.E.2d 1080 (1989). The citation restraining provision "may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with any property not exempt from the enforcement of a judgment therefrom ... belonging to the judgment debtor." 735 ILCS 5/2–1402(f)(1). A party who violates the restraining provision of a citation may be punished by the court for contempt. 735 ILCS 5/2–1402(f)(1).

The citation under state law and its restraining provision only bars transfer of a debtor's nonexempt property. Thus, if a debtor uses or spends exempt property, there is no violation of the citation and a bankruptcy debtor should not be subject to contempt charges under state law. Also, it is clear that if a debtor receives property belonging to another from that person after service of the citation, that money is likewise not affected by the citation.

While Illinois law provides for commencement of a citation supplementary proceeding, once a judgment debtor files in bankruptcy, the bankruptcy automatic stay goes into effect and proscribes certain actions by a judgment creditor against the debtor.

*See* § 11 U.S.C. § 362. The automatic stay prevents a "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Rimsat, Ltd.*, 98 F.3d 956, 961 (7th Cir.1996). The filing of a bankruptcy petition

> ... operates as a stay, applicable to all entities of (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

Under the Bankruptcy Code, either the applicable state law or the federal exemptions may be selected pursuant to 11 U.S.C. § 522(b) unless a state chooses to "opt out" of the federal exemption system. The state of Illinois has "opted out" of the federal exemption system. 735 ILCS 5/12–1201. Thus, in order to claim exemptions in bankruptcy, an Illinois debtor must schedule in bankruptcy all property that is asserted to be exempt under Illinois

law. 735 ILCS 5/12–1201; Fed. R. Bankr.P. 4003.

■ Bankruptcy debtors list their claimed exemptions on schedule C of Official Bankruptcy Form 6. After a debtor claims property exempt, any party in interest may object to the claimed exemption. 11 U.S.C. 522(*l*); Fed. R. Bankr.P. 4003(b). Section 522(*l*) provides that "unless a party in interest objects, the property claimed as exempt on such list is exempt." The time for anyone to challenge a claimed exemption is 30 days after the conclusion of the meeting of creditors or the filing of any amendment to the exemption list or supplemental schedules unless further time is granted by the court. Fed. R. Bankr.P. 4003(b). Failure of a trustee or creditor to object within the thirty days provided by Bankruptcy Rule 4003(b) waives the right to contest the validity of an exemption. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992).

■ Included in the list of exemptions available to Illinois debtors is a "wildcard" exemption which allows a debtor to protect his interest, not to exceed $2,000 in value, "in any other property," including cash on hand. 735 ILCS 5/12–1001(b). This "wildcard" exemption can certainly be used by a bankruptcy debtor to exempt assets which could then be used to pay the bankruptcy court filing fee and attorneys fees. There could be an issue raised as to whether particular funds used by a debtor for these purposes were truly exempt, but this question can be resolved in the context of the bankruptcy case by an objection to the exemption claim under Rule 4003(b). *See* Fed. R. Bankr.P. 4003(b). In this case, Debtor did assert his "wildcard exemption" and no objection was filed thereto.

■ Several conclusions can be drawn from the foregoing. A judgment debtor who has been served with a citation containing a restraining order may nonetheless use exempt funds to pay for bankruptcy filing fees and legal representation, but should specifically claim such funds as exempt on bankruptcy schedule C. If payments in connection with a bankruptcy case came from funds listed as exempt by the debtor and not successfully challenged under Rule 4003(b), the exemption becomes incontestable under federal law and there should be no basis for contempt proceedings in connection with the citation restraining order.

■ However, should a judgment debtor who has been served with a pre-bankruptcy citation restraining order transfer nonexempt funds to bankruptcy counsel, there may be a basis for contempt proceedings in state court despite the bankruptcy filing. *See* 735 ILCS 5/2–1402(f). Failure to list the funds as exempt on bankruptcy schedule C, or a determination by the Bankruptcy Court after an objection under bankruptcy Rule 4003(b) that an exemption for such funds was improperly claimed, may permit a creditor to seek state court contempt proceedings. However, creditors and their counsel seeking to pursue debtors under this or any other theory in state court must first seek in the Bankruptcy Court an order modifying the automatic stay for cause under 11 U.S.C. § 326(d), so they can present the situation to the state court. It would seem that an expenditure of Debtor's nonexempt funds in violation of process under state law would indeed be cause for stay modification.

■ In this case, Debtor did not use exempt funds although he asserted his $2,000 exemption; rather he used money from a third-party source, his wife. Therefore, he was not in violation of the restraining provision of the citation both because he had asserted the exemption and because the money came from a third-party source.

### C. *Violation of the Automatic Stay*

The stay provision of § 362(a)(1) is drafted very broadly. *See 3 Collier on*

*Bankruptcy ¶ 362.03(3) (15th ed. rev. 1999).* It provides for a broad stay of litigation, enforcement of legal process and liens and other actions that comprise attempts to enforce or collect prepetition debts. It also stays a variety of actions that would affect or interfere with property of or held by the bankruptcy estate. *See* 11 U.S.C. § 362.

 When Mr. Howe asked Debtor whether he had filed for bankruptcy, that question was not improper because it requested Debtor's status and cannot be interpreted as constituting an effort to collect the judgment. However, Mr. Howe should not have begun the interrogation even to have Debtor sworn because his firm had been noticed about the pending bankruptcy. He certainly should have ended the examination after receiving an affirmative response to the first question, and should not have posed any further question. Had Debtor not been in bankruptcy, a question asking whether he had transferred any property after receiving the citation summons would, of course, have been proper. *See* 735 ILCS 5/2–1402(a) and (f). However, during pendency of a debtor's bankruptcy, any use of state court process for collection of debts violates the automatic stay. By inquiring whether Debtor paid any money in violation of the citation after Debtor was sworn in the citation proceeding, Mr. Howe sought to enforce the authority of the citation summons. Since he was following instructions and policy of his firm in doing so, the firm is responsible for what he did.

The purpose behind the Illinois statute and evidence in this case support the conclusion that posing the second question was the continuation of a legal process to collect a debt. Debtor appeared in state court under the coercive power of the state citation which puts a lien on personal nonexempt property and seeks to recover it. *See* 735 ILCS 5/2–1402. Counsel asked questions at an interrogation session to Debtor while under oath. The second question that Mr. Howe posed comprised an examination of Debtor designed under the state statute to give information to a judgment creditor about location or transfer of Debtor's property, and to inform the creditor whether Debtor violated his obligation under state law not to transfer his nonexempt property after the citation was served. *See City of Chicago v. Air Auto Leasing Co.,* 297 Ill.App.3d 873, 232 Ill. Dec. 46, 697 N.E.2d 788 (1998). Mr. Howe was seeking to determine whether the rights of Coronet Insurance Group under the citation lien had been violated, and therefore his posing of the acknowledged second question was a violation of the automatic bankruptcy stay, as was his reporting of the answer to the state court judge before first obtaining permission here to pursue the citation. As earlier noted, Debtor testified that even more questions about his finances were asked by Mr. Howe. That testimony was credible despite denials by Mr. Howe. However, we need not resolve that issue because the acknowledgment by Mr. Howe of one forbidden question and the unhappy consequences that followed is enough to enable ruling here.

**D. *Violation of the stay was willful***

Section § 362(h) provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). Debtor is indisputably an individual and thus has standing to invoke a claim for his damages.

 Willfulness under § 362(h) requires knowledge that a formal bankruptcy petition has been filed, whether through formal notice or otherwise. *Price v. Rochford,* 947 F.2d 829 (7th Cir.1991). A willful violation of the stay does not require that the creditor had the specific intent to violate the stay. *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989). If the violation is particularly egregious, the debtor may be

awarded punitive damages as well. *In re Atlantic Business & Community Corp.,* 901 F.2d 325 (3d Cir.1990).

■ This violation of the automatic stay by Mr. Howe in seeking information under authority of the citation proceeding was not inadvertent but rather was willful. He and other Cavenaugh attorneys were aware of Debtor's bankruptcy. Nonetheless, in accord with instructions from his firm and its practice, Mr. Howe tried to enforce the process of the citation in state court by asking at least one probing question of Debtor. It was the authority of the citation, which has as its purpose to seek and collect a judgment, that Mr. Howe exercised in asking the second question which gave rise to the answer later reported to the state court judge and thereby brought about a series of problems that cost Debtor a significant amount of money and legal fees and ballooned out of control.

■ Because Mr. Howe's actions were willful, actual damages will be imposed. Because they were performed under Cavenaugh's instructions and policy and on behalf of a client, the young lawyer Mr. Howe shall not be alone in receiving sanctions. Indeed, because he is a new lawyer and was following office instructions, he will not be assessed punitive sanctions.

■ Under § 362(h) "damages" are defined expressly as "including costs and attorney's fees." Some opinions of bankruptcy judges have found that the award of attorney's fees under § 362(h) is an independent matter from the issue of actual damages. *See Lovett v. Honeywell,* 930 F.2d 625, 629 (8th Cir.1991)("[since] there is insufficient evidence in the record to support an award of actual damages ... an award of attorney's fees is not appropriate"); *In re Aiello,* 231 B.R. 684, 689 (Bankr.N.D.Ill.1999) (Katz, J.); *In re Micro Mktg. Int'l, Inc.,* 150 B.R. 573, 575 (Bankr.M.D.Pa.1992)(no attorney's fees for willful violation because fees are only allowable to embellish actual damages); *In re Hen House Interstate, Inc.,* 136 B.R.

220, 223 (Bankr.E.D.Mo.1992); *In re Haan,* 93 B.R. 439, 441 (Bankr.W.D.N.C. 1988)("Here there is 'no harm-no foul' and no injury—no attorney's fees.").

However, when parties are threatened by a willful violation of the automatic stay, an attorney must be hired to defend them. The resultant attorney's fees incurred are damages to the debtor in every real sense. Congress recognized that fact in the way that it worded the statute. Section 362(h) expressly authorizes the award of costs and attorney's fees as part of damages to be considered because the statute says that "damages" are "including costs and attorneys fees." Thus, under a plain language reading of the statute, Debtor is entitled to an award of his attorney's fees and expenses incurred in the prosecution of his Motion for Sanctions.

**E.** *Amounts of Sanctions Allowed*

■ After considering the affidavits and Cavenaugh's Objection, and following the hearing thereof, Debtor's attorney's fees and expenses will be allowed or disallowed and objections disposed of as follows:

A. Forty-five minutes of attorney time will be disallowed for part of the time that Mr. Desmond billed for research regarding the automatic stay because it cannot be accepted that Mr. Desmond (a skilled bankruptcy practitioner) had to do as much research as he reported on that subject.

B. Thirty minutes billed by Mr. Desmond for a conference with the referring partner Mr. Silverman will be allowed. Although a conference itself does not give value to the debtor, it is understandable that referring partners want and are entitled to be kept apprised of what is going on with their client. Moreover, Mr. Silverman himself did not ask for any fees for that conference.

C. One third of an hour will be disallowed for the motion before Judge Wedoff because that motion was improvident al-

though it was understandable under the circumstances.

D. Therefore, of the 6 hours billed by Mr. Desmond on July 1, 1999 three quarters of an hour will be disallowed for research on the automatic stay and one third will be disallowed for Judge Wedoff's motion. Of the $1050 billed for work that day by Mr. Desmond, $600 will be allowed and $450 disallowed.

E. With regard to attorney Semrad's time the same day, he also charged for his time with Mr. Silverman and also appeared before Judge Wedoff. As with Mr. Desmond, a third of his time which is $50 will be disallowed.

F. The $525 that Mr. Silverman billed for the July 2 hearing, which he attended will be disallowed. Mr. Semrad met with the Debtor and so did Mr. Desmond, on July 2nd to prepare for the hearing and they attended it. Mr. Silverman also attended the same hearing and billed for 3 hours, making a total of three lawyers for Martin thereat. That Mr. Silverman wanted to look after his client Mr. Martin is not a good explanation; two other able lawyers were looking after Mr. Martin's interest.

G. Since Mr. Martin was ordered to appear on possible contempt charges, he was entitled to separate counsel and will seek payment of said counsel from the Debtor. Thus, the Court will allow the other two lawyers to be compensated by way of compensating Debtor for the damages of his added legal expenses.

H. All other fees and expenses sought and detailed in affidavits filed on Debtor's behalf are allowed as reasonable and necessary and objections thereto overruled. In consequence of the foregoing, Mr. Semrad's firm will be allowed $1,920 claimed minus $50, for a total of $1,870. Mr. Desmond's firm will be allowed the $4,856.25 claimed minus $450 and minus $525 plus the $69 in expenses for filing the special and limited appearance in the state court, for a total of $3,950.25

I. Since it was necessary for Debtor's counsel to attend the hearing before this Court as well, one hour is added to the allowances for each counsel, so Mr. Desmond and Mr. Semrad will be allowed an additional $175 and $160 respectively.

J. Debtor will also be compensated for two days that he lost from work because of the hearings described above. While he was paid by his employer for those days, the days off were debited from his available personal time provided by his employer and were worth to him $118.56 a day. Debtor's testimony as to the parking charges and miscellaneous driving charges totaling $92 is credible. Therefore, he will be allowed actual damages totaling $329.12 in addition to monies for attorneys' work for a grand total of $6,484.37 in actual damages.

K. Punitive damages will be allowed under § 362 because once the problem and violation became evident, Cavenaugh stubbornly persisted in litigating an indefensible position, thus aggravating the expense and wastage of Debtor's resources. Therefore, $2,000 in punitive damages will be allowed against it in addition to actual damages, (but not against Mr. Howe) not only because of conduct described here, but also to make clear that the practice of this firm and others of obtaining information from a debtor in bankruptcy to bring before the state judge to prompt proceedings that harass the debtor is not acceptable.

### Conclusion

It is true, as argued by Cavenaugh, that Debtor should have called his lawyer who would have taken charge of the problem in some way. However, Debtor is not a lawyer and he appeared in obedience to court issued process. A person should not be found at fault for obeying an order of court. It was the lawyer before whom Debtor appeared and more senior lawyers at his firm who should have recognized the problem that was posed by the bankruptcy

pendency. Debtor cannot be expected to have had that knowledge. The burden of fault in this situation was on Cavenaugh's attorneys who allowed the citation process to proceed despite the bankruptcy. Once they learned of the $160 payment, they should have asked Debtor's lawyer regarding the source of money used before running to cause mischief by reporting inadequate information to the state court judge.

There are several proper ways in which to learn whether nonexempt property has been transferred, or to obtain any other information concerning a debtor's affairs after a bankruptcy petition is filed: Creditor's counsel can ask debtor's counsel for information, more formally can move the bankruptcy judge to modify the stay to allow state court proceedings, see 11 U.S.C. § 362(d), or attend a bankruptcy creditor meeting held under 11 U.S.C. § 341 to ask about possible transfer of debtor's funds, or seek a deposition under Fed. R. Bankr.P.2004 to pose questions to the debtor. Rather than avail themselves of these options, Mr. Howe followed his firm's policy and instructions, and made a deliberate effort to place some heat on Debtor by asking a question which might result, as it did, in a criminal contempt proceeding.

For reasons more fully discussed above, Debtor's Motion for Sanctions is therefore granted. Because actions of the Cavenaugh firm were egregious, a punitive sanction as well as actual damages will be imposed against the firm in the amounts earlier discussed totaling $8,484.37. Its client Coronet is also responsible jointly and severally for those sanctions. Mr. Howe will only be assessed the actual damages of $6,484.37 (which is part of, not in addition to, sanctions imposed on the others). These parties are separately ordered to pay the foregoing within 21 days hereof. If paid in full, the sanctions may be satisfied by payment directly to each of the attorneys and Debtor in the amounts indicated for each. Absent payment, judgment will be entered in favor of Debtor and against Cavenaugh and Coronet in a sum up to 50% greater than the sanctions against them to take into account the necessary costs of and fees for collection proceedings on the judgment, and a payment schedule will be set on Mr. Howe's sanctions.