**In re Michael LYCKBERG, Debtor.**

**David E. Grochocinski, Plaintiff,**

**v.**

**Allstate Insurance Company, Defendant.**

**Bankruptcy No. 02 B 02845. Adversary No. 03 A 02117.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 21, 2004.

884

Arthur W. Rummler, Esq., Grochocinski, Grochocinski & Lloyd, Ltd., Orland Park, IL, for Plaintiff.

Stanley A. Kitzinger, Esq., Condon & Cook, LLC, Chicago, IL, for Defendant.

David E. Grochocinski, Esq., Grochocinski, Grochocinski & Lloyd, Ltd., Orland Park, IL, trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the complaint of David E. Grochocinski, as Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Michael Lyckberg (the "Debtor"), against Allstate Insurance Company ("Allstate"), seeking turnover under 11 U.S.C. § 542 of an alleged asset of the Debtor's estate, namely a pre-petition insurance policy claim for alleged losses resulting from theft of the Debtor's assets, and for an alleged violation of the automatic stay under 11 U.S.C. § 362(a) by Allstate.[1] In addition, the Trustee filed a motion in limine against Allstate seeking sanctions for its failure to timely file its proposed findings of fact and conclusions of law in accordance with the Court's Final Pretrial Order.

For the reasons set forth herein, the Court finds that the Trustee failed to meet his burden of proof on the relief requested, despite a willful violation of the automatic stay by Allstate. The Court grants judgment in favor of Allstate and against the Trustee. Allstate's motion for directed

---

1. The one-count complaint seeks only an order from the Court directing Allstate to turn over applicable proceeds of the insurance policy. In both pretrial and post-trial submissions, however, the Trustee contends that Allstate violated the automatic stay and breached its contractual obligations under the insurance policy when it denied the Debtor's claim. The Court will address all theories and arguments propounded by the Trustee.

findings is granted pursuant to Federal Rule of Bankruptcy Procedure 7052. Further, the Court assesses the Trustee's attorney's fees in the sum of $371.25 against Allstate's attorneys as a sanction for their failure to comply with the Court's Final Pretrial Order. Allstate's attorneys are directed to pay that sum to the Trustee forthwith.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (E) and (O).

## II. *FACTS AND BACKGROUND*

The Debtor purchased a homeowner's insurance policy (the "Policy") from Allstate. Trustee Ex. No. 2; Allstate Ex. No. 1. The Policy afforded homeowner's insurance coverage for the property located at 448 Tennyson, Bartlett, Illinois. *Id.* Specifically, the Policy afforded insurance on the home, its contents and certain items of personal property. *Id.* It is undisputed that the Policy was in effect on the date of the claimed loss. The Policy includes a requirement that the insured cooperate with the insurer in its investigation, settlement and defense of any claim or suit. Specifically, the Policy sets forth an insured's obligations when submitting a claim, which include, among other things, notifying Allstate of the loss; allowing Allstate to examine accounting records, invoices, and other documents establishing that the insured purchased the items claimed; showing the damaged property to Allstate; submitting to an examination under oath; and submitting a sworn proof of loss. *Id.* pp. 14–15, Section I Conditions.

The Debtor asserted and filed a claim for loss of numerous items of personal property resulting from a burglary and theft from his residence that allegedly occurred on January 23, 2002, coincidentally the same day he filed a voluntary Chapter 7 bankruptcy petition. Allstate Ex. No. 12. The Debtor's petition, schedules and statement of affairs were signed and executed on January 16, 2002, before the alleged loss occurred. *Id.* On January 28, 2002, the Debtor submitted a detailed list to Allstate asserting that $33,296.10 in jewelry, cash, tools, a tool box, and various items of equipment were stolen. Trustee Ex. No. 4; Allstate Ex. No. 14. On February 8, 2002, Allstate sent the Debtor a letter detailing the requirements under the Policy when making a claim for loss. Trustee Ex. No. 7. Subsequently, on February 14, 2002, the Debtor submitted a sworn statement to Allstate in support of his claimed loss. Trustee Ex. No. 10; Allstate Ex. No. 13. At the request of Allstate, the Debtor supplemented the claim. Allstate Ex. No. 15.

On the same day as the alleged loss, the Debtor notified the Village of Bartlett police department of the burglary and theft. It dispatched officers who conducted an investigation. Trustee Ex. No. 5; Allstate Ex. Nos. 17 & 18. On March 13, 2002, the police department concluded the investigation without resolve. Trustee Ex. No. 6.

Allstate conducted its own investigation of the claim. Allstate Ex. Nos. 8 & 16. On February 22, 2002, after the Debtor's bankruptcy petition was filed, Allstate, pursuant to the terms of the Policy, made a demand on the Debtor to submit to an examination under oath and directed him to produce certain documents for inspection and photocopying. Trustee Ex. No. 1A; Allstate Ex. No. 2. The examination under oath was initially scheduled for March 11, 2002, but was never conducted.

Trustee Ex. Nos. 1B, 1C & 1D; Allstate Ex. Nos. 3, 4 & 5. Allstate insisted that the examination go forward and the documents be produced, and the failure to do so would constitute a breach of the Policy by the Debtor, resulting in the denial of the claim.

Sometime in mid-March 2002, the existence of the claim was brought to the attention of the Trustee. Trustee Ex. No. 1C; Allstate Ex. No. 4. Allstate contended that the Debtor's bankruptcy case did not affect Allstate's contractual rights under the Policy, and that it had an absolute right to investigate the claim, including the rights under the Policy to take the Debtor's examination under oath and require him to produce certain requested documents. Trustee Ex. No. 1D; Allstate Ex. No. 5. The Trustee, by letter dated April 16, 2002, began correspondence with Allstate advising of his desire to depose the Debtor under Federal Rule of Bankruptcy Procedure 2004. Trustee Ex. No. 1E; Allstate Ex. No. 6. On April 17, 2002, Allstate denied the Debtor's claim based upon his failure to produce documents and appear for an examination under oath as required by the terms and conditions of the Policy. Trustee Ex. No. 13. Thereafter, on May 16, 2002, the Trustee advised Allstate that the Debtor's claim became a part of the bankruptcy estate and that Allstate had violated the automatic stay by: (1) denying the Debtor's claim without first obtaining relief from the automatic stay; (2) attempting to depose the Debtor without first obtaining such stay relief; (3) prohibiting the Trustee from attending the Debtor's examination under oath; (4) continuing to communicate directly with the Debtor instead of the Trustee without obtaining relief from the automatic stay; (5) denying the Debtor's claim, and failing to notify the Trustee; and (6) attempting to use the Debtor's bankruptcy petition as

grounds to deny the claim under the Policy, which deprived the Trustee of necessary financial and commercial documents essential to the administration of the estate. Trustee Ex. No. 1G; Allstate Ex. No. 8.

The Trustee filed the instant complaint on June 23, 2003. Allstate denies liability under the Policy and asserts that it had valid contractual defenses because the Debtor failed to appear for the examination under oath, failed to produce all of the required documents, and "staged" the claimed loss. Allstate also denies any violation of the automatic stay. The Court held an evidentiary hearing wherein Allstate made a motion for directed findings under Federal Rule of Bankruptcy Procedure 7052, which incorporates by reference Federal Rule of Civil Procedure 52(c). The Court reserved ruling on the motion until the close of all the evidence.

At trial, the Trustee testified that during the initial meeting of creditors under 11 U.S.C. § 341, the Debtor disclosed the claimed loss under the Policy. Thereafter, the Trustee made his initial contact with Allstate. The Trustee testified that he never received notice of the examination under oath request by Allstate. He stated that although he offered Allstate the opportunity to participate in a Bankruptcy Rule 2004 examination of the Debtor, Allstate did not attend the examination.[2] The Trustee acknowledged that he ratified the Debtor's act of making the claim to Allstate under the Policy. However, the Trustee testified that he never ratified the Debtor's underlying actions in connection therewith, namely the Debtor's failure to submit all documents to Allstate as requested.

On cross-examination, the Trustee admitted that the Debtor's schedules do not

---

2. A transcript of that examination has not   been furnished to the Court.

reflect the over $30,000.00 in tools, equipment, jewelry and cash allegedly stolen. Moreover, the Trustee testified that some of the photographs taken by both the police officers and Allstate revealed certain items of personal property, such as a computer and related peripheral equipment, that were not listed by the Debtor in the schedules or statement of affairs when the bankruptcy case was filed. Allstate Ex. No. 18. The Trustee questioned exactly what was taken in the alleged theft because most of the stolen items were not listed on any schedules or documents the Debtor filed with the bankruptcy petition.

Anita Lieberman, an adjustor for Allstate, also testified. After the Debtor's claim was made to Allstate and assigned to her for investigation, she met with the Debtor at his residence and took a number of photographs of the interior. Allstate Ex. No. 16. On February 8, 2002, she obtained a credit report on the Debtor and learned for the first time that he had filed a bankruptcy petition. Trustee Ex. No. 9. Lieberman further testified that the Debtor spoke about his financial condition during her investigation. He did not inform her that he had filed a bankruptcy petition. Rather, he stated that he had no large outstanding or unpaid bills and that he was current on the payment of his debts. Lieberman testified that her investigation revealed the Debtor's pending bankruptcy case and over $71,000.00 in unpaid past due debts. This discovery led her to conclude that the Debtor had misled Allstate and perhaps "staged" the claimed loss. Accordingly, she recommended that the Debtor submit to an examination under oath.

Lieberman stated that after her preliminary investigation, she referred the matter to Allstate's attorneys on February 22, 2002. She admitted that the Policy had no specific requirements as to where the examination was to take place, and that nothing in the terms of the Policy prevented the insured from having his attorney or another party present. According to Lieberman, the Debtor never explained the discrepancies between the proof of loss he submitted to Allstate and the bankruptcy petition and schedules that failed to list the missing cash, tools, equipment and jewelry. Lieberman testified that she wrote the April 17, 2002 letter that denied the Debtor's claim based on his failure to appear for the examination, provide supplemental documents, and otherwise comply with certain Policy conditions. Trustee Ex. No. 13.

Officer Christopher Solesky testified that at the time of the alleged burglary and theft, he was serving as a detective in the Bartlett police department. On January 23, 2002, he went to the Debtor's residence, investigated the scene and inspected both the exterior and interior of the home. He testified that he did not see any signs of forced entry through a window or door into the interior. He noted that there were no other signs of a residential burglary, which typically result in a disheveled or ransacked condition of the premises. According to Officer Solesky, the interior of the house looked neat and orderly and was not in any visible disarray. Officer Solesky testified that the Debtor told him that he had not cleaned the house before the police arrived.

Officer Solesky observed that numerous items that are normally taken in residential burglaries, such as stereo equipment and silverware, remained in the Debtor's residence. He identified the police photos taken during the investigation. Allstate Ex. No. 18. These photographs depicted various desk drawers that were open, but the contents thereof appeared to be undisturbed, unlike the more common residential burglaries where drawers are lifted out

and the contents dumped in search of valuable items. Officer Solesky could not definitively conclude that a burglary had actually occurred because the Debtor was subsequently uncooperative with the police. He admitted that there were potential entrances into the interior of the residence, such as an unlocked patio door or rear door, by which entrance could have been obtained without force.

### III. DISCUSSION

#### A. The Trustee's Request for Turnover and Allegations of Breach of Contract

The Bankruptcy Code's statutory provision for turnover contained in 11 U.S.C. § 542(a) deals with property of the estate to be turned over, in this case to the Trustee. Turnover is not intended as a remedy to determine disputed rights of parties to property; rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate. *Marlow v. Oakland Gin Co. (In re Julien Co.)*, 128 B.R. 987, 993 (Bankr. W.D.Tenn.1991). The evidence must show that the asset in question is part of the bankruptcy estate. *Mather v. Tailored Fabrics, Inc. (In re Himes)*, 179 B.R. 279, 282 (Bankr.E.D.Okla.1995). Only the property that the debtor has an interest in becomes part of the bankruptcy estate and can be subject to turnover under § 542(a). *Cates–Harman v. Stage (In re Stage)*, 85 B.R. 880, 881 (Bankr.M.D.Fla.1988) (citation omitted). The burden is on the Trustee seeking turnover. *See Helms v. Roti (In re Roti)*, 271 B.R. 281, 291 (Bankr. N.D.Ill.2002) (citation omitted), *aff'd sub nom. Nelmark v. Helms*, 02 C 0925, 2003 WL 1089363 (N.D.Ill. Mar.11, 2003); *Lauria v. Titan Sec., Ltd. (In re Lauria)*, 243 B.R. 705, 708 (Bankr.N.D.Ill.2000). To prevail, the Trustee must prove that the property is part of the bankruptcy estate.

*Roti*, 271 B.R. at 291; *Lauria*, 243 B.R. at 708.

The filing of a bankruptcy petition creates an estate consisting of the debtor's property. 11 U.S.C. § 541(a). The Bankruptcy Code contains an "expansive definition" of property of the estate, *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987), encompassing "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Under this definition, "virtually all property of the debtor" becomes property of the estate. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993). "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Id.* (citation omitted). Not surprisingly then, "property" for purposes of § 541 includes insurance policies in which the benefits are payable to the debtor. *See In re Equinox Oil Co.*, 300 F.3d 614, 618 (5th Cir.2002) (an insurance policy owned by the debtor is generally considered property of the estate); *Maxwell v. Megliola (In re marchFIRST, Inc.)*, 288 B.R. 526, 530 (Bankr.N.D. Ill.2002) (directors' and officers' liability policies that were purchased by debtor were property of the estate); *In re Denny*, 285 B.R. 184, 186 (Bankr.M.D.N.C.2002) (fire insurance policy owned by debtors was property of the estate); *In re Hoffpauir*, 258 B.R. 447, 454 (Bankr.D.Idaho 2001) (insurance policy covering losses from fire damage to debtor's residence was property of the estate); *In re Doyle*, 209 B.R. 897, 905–06 (Bankr. N.D.Ill.1997) (insurance proceeds of a life insurance policy were found to be property of the estate, and also properly exempted by the debtor). The bankruptcy estate's rights are limited to those that the debtor had at the time of the filing of the petition, and are not enhanced by the bankruptcy.

*In re Psychotherapy & Counseling Ctr., Inc.*, 195 B.R. 522, 532 (Bankr.D.D.C.1996) (citations omitted).

■ Under well-settled Illinois law, an action for breach of contract requires proof of four elements: (1) the existence of a valid and enforceable contract; (2) performance of the contract by the plaintiff; (3) breach by the defendant; and (4) a resulting injury to the plaintiff. *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Group, Inc.*, 218 F.Supp.2d 974, 976 (N.D.Ill.2002) (*citing Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir.2001)); *Applied Indus. Materials Corp. v. Mallinckrodt, Inc.*, 102 F.Supp.2d 934, 937 (N.D.Ill.2000) (citations omitted); *Henderson–Smith & Assoc., Inc. v. Nahamani Family Serv. Ctr., Inc.*, 323 Ill. App.3d 15, 27, 256 Ill.Dec. 488, 752 N.E.2d 33, 43 (1st Dist.2001) (citation omitted). Accordingly, in order to prove a prima facie breach of contract claim, the Trustee must show that the Policy was a valid contract; that the Debtor or the Trustee performed all contractual duties; that Allstate failed to meet its obligation under the Policy; and that the Debtor or the Trustee suffered damages as a result of Allstate's breach. *See Intervisual Communications, Inc. v. Volkert*, 975 F.Supp. 1092, 1099 (N.D.Ill.1997) (citation omitted).

■ It is undisputed that the Policy became part of the bankruptcy estate under § 541(a) and subject to the Trustee's administration. What is disputed is whether the claim the Debtor made under the Policy was proper; whether Allstate was required to pay any proceeds to the Debtor; and whether Allstate had any legitimate defenses under the Policy. The Trustee argues that he and the Debtor fulfilled all contractual obligations under the Policy, which Allstate allegedly breached when it denied the $33,296.10 claim. Allstate, on the other hand, contends that the Debtor's failure to appear for the required examination under oath and produce the additional documents afforded it a defense to any payment of the claim under the Policy. Moreover, Allstate asserts that the tools and equipment allegedly taken in the burglary were actually used in the Debtor's business, and the loss was subject to the Policy limits on business property. Furthermore, Allstate maintains that no loss actually occurred. Rather, it argues that the Debtor "staged" the loss. Finally, Allstate contends that because it was not obligated to pay any benefits to the Debtor under the Policy, the Trustee has no recoverable property interest.

After considering the totality of the evidence adduced at trial, the Court concludes that the Trustee has not met the requisite burden of proof to establish by a preponderance of the evidence that Allstate is liable under the Policy to pay the claim asserted by the Debtor. Although the evidence includes some documentation of the Debtor's alleged loss by theft and burglary, there is simply no corroborative evidence in the record to definitively establish the claimed loss. Neither the Debtor, his spouse, nor any other witness with first hand knowledge of the alleged loss and damages testified in support of the Trustee's action against Allstate. Further, the Court finds that the testimony of Officer Solesky and Anita Lieberman, as well as the fact that the Debtor did not list any of the allegedly stolen items on his schedules, raises a serious question about whether the alleged loss actually occurred or whether it was "staged." Hence, the Court finds that the Trustee failed to establish by a preponderance of the evidence that Allstate breached the contractual obligations in the Policy when it denied the Debtor's claim or that the Debtor is enti-

tled to turnover of the alleged $33,296.10 loss.

██ Even if there was a non-forced entry by burglary into the Debtor's home and some items were in fact stolen, the evidence failed to establish the precise amount of the claim payable under the Policy. The Trustee failed to adduce any evidence at trial to establish the depreciated replacement value of the items under the Policy.[3] Without evidence, any value the Court might assign would be merely a guess. Guessing is not considered a legitimate method for valuing property. *See In re Pilavis*, 233 B.R. 1, 8 n. 55 (Bankr. D.Mass.1999) (deriding valuations as "guesses" for which "no basis was provided"); *In re Tsunis*, 29 B.R. 527, 531 n. 3 (Bankr.E.D.N.Y.1983) (rejecting valuation "based on supposition and conjecture"), *aff'd*, 39 B.R. 977 (E.D.N.Y.1983), *aff'd*, 733 F.2d 27 (2d Cir.1984).

Additionally, the testimony suggested that many of the items may not have been used by the Debtor personally. Rather, the tools and equipment were utilized in conjunction with the Debtor's business as a tool salesman. Business tools and equipment are subject to different and more restrictive coverage terms under the Policy.[4] In sum, the preponderance of the credible evidence did not establish a proven loss under the Policy for which Allstate is liable.

**B.  *Whether Allstate Violated the Automatic Stay***

██ The Trustee argues that Allstate violated the automatic stay. Upon the filing of a bankruptcy petition, the automatic stay arises as á matter of law. 11 U.S.C. § 362(a). The automatic stay is a powerful tool of the bankruptcy courts that prohibits, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...." or "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...." 11 U.S.C. § 362(a)(1) and (a)(6).[5] The purpose of the stay is " 'to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors....' " *Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir.1998) (*quoting A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir.1986)). *See also Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 879 (7th Cir.2001) (same).

██ The Court finds that Allstate violated the automatic stay when it issued the demand to the Debtor to submit to a post-petition examination under oath.

---

3. Specifically, the Policy provides with respect to the payment of claims that: "[i]f you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation." Trustee Ex. No. 2, p. 16 ¶ 6(b) (emphasis in original); Allstate Ex. No. 1.

4. The Policy provides that coverage for "[p]roperty used or intended for use in a business, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises** ..." is limited to $2,000.00. Trustee Ex. No. 2, p. 8 (emphasis in original); Allstate Ex. No. 1.

5. There are several exceptions to the automatic stay, but none applies here. *See* 11 U.S.C. § 362(b).

This act was more than merely denying the claim and not paying as requested by the Debtor and the Trustee, which, standing alone, is not a violation of the stay. The examination under oath is clearly a proceeding against the Debtor to assess Allstate's allegation that he had "staged" the loss as a phoney claim to recover under the Policy and that he had thus defrauded Allstate. It is undisputed that Allstate knew of the Debtor's bankruptcy filing when it issued the demand to the Debtor to appear for the examination. Hence, the Court finds that Allstate's violation of the automatic stay was willful. The Trustee seeks damages for that violation pursuant to § 362(h) which provides:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

■■■■ "Willfulness under § 362(h) requires knowledge that a formal bankruptcy petition has been filed, whether through formal notice or otherwise." *In re Fridge*, 239 B.R. 182, 190 (Bankr.N.D.Ill.1999) (citation omitted). "A 'willful violation' does not require a specific intent to violate the automatic stay." *In re Price*, 42 F.3d 1068, 1071 (7th Cir.1994).

■■■■ Actual damages for purposes of § 362(h) should be awarded only if there is evidence supporting the award of a definite amount that may not be predicated upon mere speculation. Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty. *See Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir.1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993). A party seeking damages must prove them using methodologies that need not be intellectually sophisticat-ed. *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir.1992). Still, a damage award cannot be based on mere speculation, guess or conjecture. *Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 930 (7th Cir.1985).

■■■■ The Court declines to award any damages. The Trustee failed to show any actual damages incurred by the Debtor or his estate as a result of Allstate's issuance of the demand to the Debtor to appear at the examination under oath. Indeed, the Debtor never submitted to the examination. Further, the Court declines the Trustee's request to assess costs, attorneys' fees or punitive damages against Allstate. Finally, the Court finds that Allstate's denial of the Debtor's claim under the Policy did not constitute a willful violation of the automatic stay. Allstate's violation of the automatic stay does not equate with or substitute for the Trustee's required burden of proof to establish Allstate's liability under the Policy and the merits of the Debtor's claim against Allstate.

## C. The Trustee's Motion in Limine for Sanctions Against Allstate

On March 23, 2004, the Trustee filed a motion in limine for sanctions against Allstate. Pursuant to the motion, the Trustee contended that Allstate failed to file its proposed findings of fact and conclusions of law by March 19, 2004 as required by the Court's Final Pretrial Order. Allstate did not dispute that its attorneys failed to timely file this document. Rather, on March 25, 2004, it filed a motion seeking leave to file its delinquent proposed findings of fact and conclusions of law. On March 26, 2004, the Court denied Allstate's motion and granted the Trustee's motion in limine for sanctions. The Court afford-

ed the Trustee the opportunity to submit the time incurred by his attorney to prepare and prosecute the motion in limine.

 On March 30, 2004, Arthur W. Rummler, the attorney for the Trustee, filed an affidavit setting forth the time he spent preparing the motion in limine. According to Rummler, he spent 3.30 hours in the preparation and presentation of the motion at his hourly rate of $225.00 for a total of $742.50. The Court concurs with Allstate's position that much of the time expended was excessive and unreasonable given Rummler's experience and expertise in the practice of bankruptcy law. The motion in limine was only two pages in length and did not cite any case authority. Rather than reduce Rummler's hourly rate as Allstate suggests,[6] the Court will reduce the amount it allows as a sanction for the preparation and presentation of the motion in limine because much of the time spent was excessive, unnecessary and thus unreasonable. The Court allows one-half of the amount sought by Rummler or $371.25. Accordingly, the Court sanctions Allstate's attorneys under Federal Rules of Bankruptcy Procedure 7016(f) and 7037(b), which incorporate by reference Federal Rules of Civil Procedure 16 and 37, in the sum of $371.25 for their failure to timely file Allstate's proposed findings of fact and conclusions of law in accordance with the Court's Final Pretrial Order. Allstate's attorneys are directed to pay that sum to the Trustee forthwith.

## IV. CONCLUSION

For the foregoing reasons, the Court grants judgment in favor of Allstate and against the Trustee. Allstate's motion for directed findings under Federal Rule of Bankruptcy Procedure 7052 is granted. The Court assesses the Trustee's attorney's fees in the sum of $371.25 against Allstate's attorneys as a sanction for its failure to comply with the Court's Final Pretrial Order. Allstate's attorneys are directed to pay that sum to the Trustee forthwith.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### ORDER

For the reasons set forth in a Memorandum Opinion dated the 21st day of June, 2004, the Court finds that David E. Grochocinski failed to meet his burden of proof on the relief requested, despite a willful violation of the automatic stay by Allstate Insurance Company. The Court grants judgment in favor of Allstate Insurance Company and against David E. Grochocinski. Allstate Insurance Company's motion for directed findings is granted pursuant to Federal Rule of Bankruptcy Procedure 7052. Further, the Court assesses David E. Grochocinski's attorney's fees in the sum of $371.25 against Allstate Insurance Company's attorneys as a sanction for their failure to comply with the Court's Final Pretrial Order. Allstate Insurance Company's attorneys are directed to pay that sum to David E. Grochocinski forthwith.

---

**6.** The Court declines to reduce Rummler's hourly rate based on the Seventh Circuit's directive that attorneys practicing in the bankruptcy area should receive the hourly rate that they would receive in non-bankruptcy areas. *See In re Taxman Clothing Co.,* 49 F.3d 310, 313 (7th Cir.1995) (citations omitted). The Court finds Rummler's hourly rate reasonable and one that he would receive in non-bankruptcy matters.