2019 IL App (2d) 190210
No. 2-19-0210
Opinion filed September 18, 2019

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| FIRST BANK OF HIGHLAND PARK, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-CH-1548 |
| | ) | |
| VLADIMIR SKLAROV, a/k/a Val Sklarov; | ) | |
| CHICAGO TITLE LAND TRUST | ) | |
| COMPANY, as Trustee Under Trust | ) | |
| Agreements Dated November 1, 1999, a/k/a | ) | |
| Trust No. 1107654, February 15, 2001, a/k/a | ) | |
| Trust No. 9810, and January 20, 2000, a/k/a | ) | |
| Trust No. 1108013; SHARON SKLAROV; | ) | |
| BMO HARRIS BANK, N.A.; DEBORAH | ) | |
| S. KIMELMAN; and UNKNOWN OWNERS | ) | |
| AND NONRECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Luis A. Berrones, |
| (Vladimir Sklarov, Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    In this mortgage foreclosure case, the plaintiff, First Bank of Highland Park (Bank), moved to be appointed the mortgagee in possession pursuant to section 15-1701(b)(2) of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1701(b)(2) (West 2016)). The defendant, Vladimir Sklarov, opposed the appointment on the basis that (among other

things) the property was residential real estate and thus the statute favored maintaining him in possession. The trial court found that the property was not residential and thus the presumption in favor of Sklarov did not apply, and it granted the Bank's motion. Sklarov appeals (Ill. S. Ct. R. 307(a)(4) (eff. Nov. 1, 2017)), and we affirm.

¶ 2                                      I. BACKGROUND

¶ 3        In 2011, a land trust, of which Sklarov was the beneficiary, obtained a mortgage on the property located at 460 Hunter Lane in Lake Forest (Property). Sklarov signed the promissory note secured by the mortgage. He also signed later promissory notes associated with the refinancing of the debt. Sklarov ceased making payments on the debt, and on October 17, 2016, the Bank filed this foreclosure action.

¶ 4        Sklarov traveled extensively for work, and the last date on which he resided at the property is not contained in the record. An affidavit by Bank employee Anne O'Connor[1] stated that, before the foreclosure action was filed, Sklarov informed the Bank that he was residing in

---

[1]Sklarov argued that the O'Connor affidavit should be stricken because O'Connor was disclosed as an expert witness past the date for such disclosures. (O'Connor succeeded a different Bank employee, Joseph K. Kreisel, who originally handled the file on the Property and submitted an earlier affidavit.) The record does not reflect any explicit ruling on this argument, but the order appointing the Bank as mortgagee in possession recites that the trial court reviewed and considered both the O'Connor and Kreisel affidavits. On appeal, although Sklarov states that he "objects" to any consideration of the O'Connor affidavit, he has not asserted that the trial court's consideration of the affidavit was error, nor has he advanced any argument supported by legal authority to show such error.

Europe. It is undisputed that Sklarov has not resided in Illinois or at the Property since before the foreclosure action was filed and that a tenant named Ryan Eagle was residing at the Property when the action was filed. (Eagle was initially named as a defendant in the foreclosure action. He was dismissed from the case after he moved out.) At some point between 2014 and the filing of the foreclosure action, Sklarov and his wife, Sharon, were divorced. Pursuant to an order entered in the dissolution case, Sharon was to receive any rents generated by the Property.

¶ 5    On October 31, 2018, the Bank filed a motion pursuant to section 15-1701(b)(1) of the Foreclosure Law (735 ILCS 5/15-1701(b)(1) (West 2016)) to be appointed mortgagee in possession of the Property. Section 15-1701(b) sets out two different presumptions depending on whether the property at issue is "residential real estate":

"(b) Pre-Judgment. Prior to the entry of a judgment of foreclosure:

(1) In the case of residential real estate, the mortgagor shall be entitled to possession of the real estate except if (i) the mortgagee shall object and show good cause, (ii) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (iii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the court shall upon request place the mortgagee in possession. ***

(2) In all other cases, if (i) the mortgagee is so authorized by the terms of the mortgage or other written instrument, and (ii) the court is satisfied that there is a reasonable probability that the mortgagee will prevail on a final hearing of the cause, the mortgagee shall upon request be placed in possession of the real estate, except that if the mortgagor shall object and show good cause, the court shall allow the mortgagor to remain in possession." *Id.* § 15-1701(b).

Thus, if the property is residential, under subsection (b)(1) the mortgagor (borrower) is entitled to remain in possession unless the mortgagee (lender) meets its burden of showing good cause to be placed in possession. Nonresidential real estate is governed by subsection (b)(2). Under that provision, the lender is entitled to be placed in possession upon its request unless the borrower shows good cause why it should not be.

¶ 6   Although the Bank's motion for appointment was brought under subsection (b)(1) (which pertains to residential real estate), the body of the motion argued that the Property was not residential, because Sklarov was not living there and the Property was rented to someone else when the foreclosure action was filed. The Bank cited section 15-1219 of the Foreclosure Law, which defines "residential real estate" to include

> "any real estate, *** which *** is occupied as a principal residence either (i) if a mortgagor is an individual, by that mortgagor, that mortgagor's spouse or that mortgagor's descendants, or (ii) if a mortgagor is a trustee of a trust ***, by a beneficiary of that trust." *Id.* § 15-1219.

The Bank argued that Sklarov (the mortgagor and trust beneficiary) was not living at the Property, and neither were his spouse or children. The Bank also submitted an affidavit from the employee handling the file on the Property at the time, Joseph K. Kreisel, stating that the Bank had been told by the Village of Lake Forest that water to the home on the Property had been cut off. The Bank argued that this constituted good cause for it to be placed in possession.

¶ 7   Sklarov responded with a brief and affidavit of his own, explaining that the water was off to avoid burst pipes and that Sklarov had people "monitoring" the home, and arguing that the Bank had not shown good cause to be appointed mortgagee in possession. In its reply, the Bank attached the O'Connor affidavit, reciting the facts noted above (*supra* ¶ 4).

¶ 8      At the hearing on the motion, the trial court noted that, given the Bank's position that the Property was not residential and that Sklarov therefore bore the burden of showing why the Bank should not be appointed, the Bank should have cited subsection (b)(2) in its motion, not subsection (b)(1).  The Bank then asked to withdraw its motion and file a new motion under subsection (b)(2).  The trial court granted this request and did not rule on the withdrawn motion.

¶ 9      The next day, the Bank filed a new motion for appointment, citing subsection (b)(2).  The motion relied on the two affidavits it had previously submitted.  In response, Sklarov argued that, under the "mend the hold" doctrine, the Bank should not be permitted to file the new motion under subsection (b)(2), because it brought its earlier motion under subsection (b)(1) and thus implicitly conceded that the Property was residential real estate.  As noted, Sklarov also argued that the O'Connor affidavit should be stricken.  As for whether the Bank had shown good cause to be appointed, Sklarov attached a new affidavit, stating that the home on the Property was his only home in the United States and that he and his children stayed there when they were in the United States.  He argued that the Bank was not likely to prevail at trial.

¶ 10     After hearing oral arguments, the trial court granted the Bank's motion for appointment, finding that the Property was "not residential property as defined by 735 ILCS 5/15-1219 due to the Property having been previously rented."  This appeal followed.

¶ 11                              II. ANALYSIS

¶ 12     On appeal, Sklarov argues that the trial court erred by relying on the fact that the Property had been rented out and that the Bank failed to meet its burden of showing that the Property was not residential real estate.  Therefore, he argues, possession was governed by subsection (b)(1), not (b)(2).  Sklarov also argues that the trial court should not have permitted the Bank to

withdraw its first motion for appointment under subsection (b)(1) and file a new one pursuant to the more favorable subsection (b)(2). We address this latter argument first.

¶ 13                    A. Withdrawal of First Motion and Filing of Second One

¶ 14    Sklarov argues that, because the first motion for appointment had been fully briefed and oral argument had begun, the Bank should not have been allowed to withdraw that motion and file a new one. In support of his argument, Sklarov cites the "mend the hold" doctrine:

> "The mend the hold doctrine, which Illinois has recognized for over a century, provides that '[w]here a party gives a reason for his conduct and decision touching anything involved in a controversy, he [or she] cannot, after litigation has begun, change his [or her] ground and put his [or her] conduct upon another and different consideration. He [or she] is not permitted thus to amend his [or her] hold. He [or she] is estopped from doing it by a settled principle of law.' [Citation.] This principle typically applies in contract cases to prevent a party from trying to evade performance of contractual duties for one reason and then, in the middle of litigation, switching to another reason. It is an equitable doctrine 'developed to redress unfair and arbitrary conduct of the repudiating party.' [Citations.]" (Internal quotation marks omitted.) *1002 E. 87th Street, LLC v. Midway Broadcasting Corp.*, 2018 IL App (1st) 171691, ¶ 20 (quoting *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1042, 1044 (2007)).

The doctrine prevents a party from unfairly asserting a completely different argument or reason for its actions halfway through litigation after it comes to believe that its initial argument will not be successful. *Trossman*, 373 Ill. App. 3d at 1042.

¶ 15    Although the doctrine is not the same as equitable estoppel, it is similarly equitable in nature, rooted in a concern for fairness. See *Larson v. Johnson*, 1 Ill. App. 2d 36, 46 (1953). As

such, it is subject to equitable limitations. For instance, "a court should not apply the mend the hold doctrine where it would be inequitable to do so, such as where the new defense was 'meritorious and equitable' and was not raised [earlier] 'by inadvertence or the casual character of the repudiation or the circumstances under which it occurred.' " *Trossman*, 373 Ill. App. 3d at 1043-44 (quoting *Larson*, 1 Ill. App. 2d at 46). Courts have also refused to apply the doctrine where the defendant did not show any detriment caused by the plaintiff's change in position. *Id.* at 1044. Perhaps most relevant here, courts have "refused to apply the doctrine in the absence of unfair surprise or arbitrariness." *Id.* (citing *Smith v. Union Automobile Indemnity Co.*, 323 Ill. App. 3d 741, 746-47 (2001), and *William J. Templeman Co. v. United States Fidelity & Guaranty Co.*, 317 Ill. App. 3d 764, 771-72 (2000)).

¶ 16    Here, Sklarov has not shown that the Bank's filing of a new motion, relying on section 15-1701(b)(2), unfairly surprised him or prejudiced his ability to mount a defense. In both the first and second motions, the Bank cited section 15-1701(b) and argued that Sklarov was not living in the home on the Property and instead had been renting it out. The Bank did not change its argument, which was always that the Property was not residential real estate and that it was entitled to be appointed mortgagee in possession. Rather, it simply corrected its citation of the statute. Nor did the Bank ambush Sklarov in citing subsection (b)(2). When the Bank realized that subsection (b)(2) was the more apt source of legal support, it appropriately sought leave to withdraw its motion so that it could file a new motion addressing the issue. This gave Sklarov an opportunity to provide a complete response to the arguments and affidavits raised by the Bank in its second motion.

¶ 17    Sklarov complains that he suffered a detriment because he was forced to expend resources responding to the first motion. However, he has not provided any indication of the

amount of these wasted resources. Further, he could have sought sanctions in the trial court to make him whole, but he did not pursue that option. We therefore decline to consider this claim of detriment on appeal.

¶ 18    Sklarov also complains that the Bank used his statements in his first affidavit (which was filed in response to the Bank's first motion) against him in the second motion. Specifically, Sklarov's first affidavit stated that he had hired people to monitor and maintain the Property and that the Property was not vacant and was regularly visited. In the Bank's second motion, it argued that these statements amounted to a concession by Sklarov that he was not residing at the Property. However, the Bank had already asserted, in the affidavits it attached to its first motion, that Sklarov was not living at the Property, and thus its reference to Sklarov's affidavit was merely cumulative of other evidence. Indeed, that has been the Bank's position from the beginning: its complaint named Eagle, the tenant, as a defendant in recognition of the fact that he was then residing at the Property. Most significant, there is no indication in the record that Sklarov truthfully could have denied that he was not living at the Property. Thus, we fail to see any prejudice to Sklarov from the Bank's reference to his first affidavit.

¶ 19    Sklarov next objects that, by allowing the Bank to withdraw its first motion and file a new one, the trial court deprived him of his "right to have the [first] motion ruled upon so that he could assert *res judicata*" and related principles of claim and issue preclusion as "defenses against any subsequent motions" for appointment. But those defenses can be asserted only after the entry of a final judgment. See *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 50 (*res judicata* or claim preclusion); *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113 (1986) (collateral estoppel or issue preclusion). The trial court's ruling on a motion for appointment is not a final judgment, and thus Sklarov could not have claimed the benefit of these defenses even

if he had obtained a ruling on the first motion. See *People v. Johnson*, 2015 IL App (2d) 131029, ¶ 20 ("an interlocutory order can be reviewed, modified, or vacated at any time before final judgment" (citing *Catlett v. Novak*, 116 Ill. 2d 63, 68 (1987))).

¶ 20    As Sklarov has not established any detriment, surprise, or unfair prejudice arising from the Bank's withdrawal of its first appointment motion and filing of a new one, it would be inequitable to apply the doctrine of mend the hold here. *Trossman*, 373 Ill. App. 3d at 1043-44. We find no error in the trial court's actions in permitting the Bank to withdraw its first motion and file a new one.

¶ 21                    B. Whether the Property Was Residential Real Estate

¶ 22    The heart of this appeal is whether the Property was "residential real estate" in light of undisputed evidence that Sklarov was not living there when the foreclosure action was filed in October 2016. See 735 ILCS 5/15-1701(a) (West 2016) ("real estate is residential real estate only if it is residential real estate at the time the foreclosure is commenced"). The answer to this question determines whether the trial court erred in placing the Bank in possession. Because this issue turns on questions of statutory interpretation, our review is *de novo*. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 22. We hold that the trial court correctly determined that the Property was not residential real estate.

¶ 23    In construing a statute, our task is to "ascertain and give effect to the legislature's intent." *Lieb v. Judges' Retirement System*, 314 Ill. App. 3d 87, 92 (2000). The best indicator of the legislature's intent is the plain language of the statute. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* We will not depart from the plain language of a statute

by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *In re Michael D.*, 2015 IL 119178, ¶ 9.

¶ 24    As we have noted, section 15-1219 of the Foreclosure Law defines "residential real estate" as

> "any real estate, \*\*\* which \*\*\* is *occupied as a principal residence* either (i) if a mortgagor is an individual, by that mortgagor, that mortgagor's spouse or that mortgagor's descendants, or (ii) if a mortgagor is a trustee of a trust \*\*\*, by a beneficiary of that trust."  (Emphasis added.)  735 ILCS 5/15-1219 (West 2016).

Sklarov argues that, under this definition, the Property was "residential real estate" because it (1) was improved with a residence that (2) was "occupied" by him, as he had lawful physical possession, and (3) was "a principal residence" for him.  There is no dispute that the first of these requirements is met, as there was a residence on the property.  However, the evidence does not support Sklarov's contention that it was "occupied" by him "as a principal residence."

¶ 25    Sklarov's argument rests on a careful parsing of the statute, considering the terms "occupy" and "principal residence" in isolation.  He notes that the Foreclosure Law defines "occupant" as "a person in lawful physical possession of all or part of the mortgaged real estate." *Id.* § 15-1223.  From this, he reasons that he was an occupant of the Property because he had "lawful physical possession" of it—that is, he had the legal right to reside at and exercise control over the Property.  Separately, he notes that the statute requires only that the mortgaged property be "*a* principal residence," not necessarily his only principal residence.  He argues that he sufficiently established that the Property was a principal residence for him through his affidavit stating that he owned no other house in the United States and that he resided at the Property when he was in Illinois.

¶ 26    We must reject this piecemeal parsing of the statutory definition of residential real estate. "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007).  Thus, we must interpret the phrase "occupy as a principal residence" as a whole in harmony with other provisions of the Foreclosure Law.

¶ 27    Although the Foreclosure Law does not define the phrase "occupy as a principal residence," we have no difficulty interpreting that phrase.  When a term is not statutorily defined, we are to presume that the legislature intended the ordinary and popularly understood meaning. *People v. Beachem*, 229 Ill. 2d 237, 244 (2008).  "Principal" means chief, primary, or most important.  Black's Law Dictionary 1210 (7th ed. 1999); see also *Beachem*, 229 Ill. 2d at 244 (the ordinary and popularly understood meaning of a phrase may be ascertained through use of a dictionary).  The ordinary meaning of "occupy as a principal residence" is "use as the primary place where one resides."

¶ 28    This reading is supported by section 15-1219's narrow limitation on *whose* occupancy is required in order to qualify the mortgaged property as residential real estate: as applicable here, it must be the mortgagor, the mortgagor's spouse or descendants, or (if the mortgagor is a trust) a trust beneficiary.  735 ILCS 5/15-1219 (West 2016).  Lessees are not on this list.  Thus, rental to a tenant does not qualify the property as residential.

¶ 29    These narrow restrictions on the persons whose occupancy brings property within the ambit of "residential real estate" reflect the legislature's intent with respect to the Foreclosure Law.  That intent balances a concern for protecting homeowners with the need to provide prompt and fair relief for lenders.  Throughout the Foreclosure Law, greater safeguards and rights are

granted with respect to residential property than nonresidential property. See, *e.g.*, *id.* § 15-1401.1 (granting mortgagor of residential property additional ability to arrange a short sale prior to filing of foreclosure); *id.* § 15-1504.5 (requiring service of additional notice of rights in residential foreclosures); *id.* § 15-1603 (granting an additional month for the redemption of residential property); *id.* § 15-1604 (granting mortgagor of residential property additional opportunity to redeem even after sale); *id.* § 15-1701(b)(1) (codifying presumption that mortgagor of residential property can remain in possession during foreclosure proceeding). Section 15-1219's limitations indicate the legislature's intent to restrict the greater protections for residential real estate to situations in which the mortgaged property is being used as the home of the mortgagor or his or her immediate family. This intent supports our conclusion that "occupy as a principal residence" means "use as the primary place where one resides."

¶ 30    Under this definition, the evidence does not support Sklarov's argument that he was occupying the Property as a principal residence when the foreclosure was filed in October 2016. To the contrary, it is undisputed that the Property was then occupied by a tenant. Under the plain language of section 15-1219, a tenant is not among those whose occupancy is sufficient to qualify property as residential real estate. Moreover, it is uncontested that Sklarov had not resided at the Property for some time prior to the filing of the foreclosure, and the Property has been vacant for most of the foreclosure proceedings, ever since the tenant moved out.

¶ 31    Sklarov's statements that he owns no other house in the United States and that he resides at the Property when he is in Illinois are insufficient to show occupancy as a principal residence. That he does not reside in any *other* house in the United States does not establish that he resides in *this* one. And his statement that he resides at the Property "when he is in Illinois" is meaningless. Although the Foreclosure Law need not be read so unreasonably narrowly as to

require that the mortgagor be present on the mortgaged property at the very moment the foreclosure is filed—short absences such as vacations should not be held to vitiate a property's status as "residential real estate"—there must be some evidence in the record that the mortgagor is actually using the property as a principal residence at the time. That standard is not met by Sklarov's assertion that he resides at the Property "when he is in Illinois," given that there is no evidence as to when that last occurred or even how often Sklarov travels to Illinois. We note that the Bank contends that Sklarov has been based in Europe for the last several years, and Sklarov has not provided any contrary evidence.

¶ 32    Sklarov argues that, as the Foreclosure Law does not define the term "principal residence," we should look to other law as a possible source for that definition. In that vein, he points to the federal tax law that allows the exclusion of income from the sale of a principal residence "if, during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating 2 years or more." See 26 U.S.C. § 121 (2012). Sklarov argues that, if we were to adopt the same approach, the Property could be considered his "principal residence" despite the fact that he was not using it as a principal residence when the foreclosure was filed. However, this approach would render meaningless section 15-1701(a) of the Foreclosure Law, which provides that property is "residential real estate" only if it meets the test of "occupancy as a principal residence" as of the foreclosure's filing. "A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *People v. Clark*, 2019 IL 122891, ¶ 20. Further, Sklarov has provided no cogent argument or citation to authority for why we should look to a foreign tax

statute when the language of the Foreclosure Law is clear. And as the final nail in the coffin of this argument, we must observe that Sklarov did not raise this argument in the trial court and thus we need not consider it on appeal. *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010). For all of these reasons, we reject Sklarov's argument based on section 121 of the federal tax code.

¶ 33    The evidence establishes that Sklarov was not using the Property as a principal residence when the foreclosure was filed. Accordingly, the trial court did not err in granting the Bank's motion to be appointed mortgagee in possession.

¶ 34                                                    III. CONCLUSION

¶ 35    For the reasons stated, the decision of the circuit court of Lake County is affirmed.

¶ 36    Affirmed.

---

**No. 2-19-0210**

---

| | |
|---|---|
| **Cite as:** | *First Bank of Highland Park v. Sklarov*, 2019 IL App (2d) 190210 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 16-CH-1548; the Hon. Luis A. Berrones, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael T. McCracken, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Thomas J. Dillon, Wendy Kaleta Gattone, Nicholas S. Maragos, and Kyle T. Dillon, of McFadden & Dillon, P.C., of Chicago, for appellee. |

---