# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Triumph Community Bank v. IRED Elmhurst, LLC*, 2021 IL App (2d) 200108

</div>

| | |
|---|---|
| Appellate Court Caption | TRIUMPH COMMUNITY BANK, f/k/a The National Bank, as Assignee of First Midwest Bank, Successor in Interest to the Federal Deposit Insurance Corporation, Solely as Receiver for First Du Page Bank, Plaintiff-Appellee, v. IRED ELMHURST, LLC; INTERNATIONAL REAL ESTATE DEVELOPMENT, LLC; INTERNATIONAL LAND DEVELOPMENT CORPORATION; INLAND MORTGAGE DIRECT FUNDING CORPORATION; UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants (International Real Estate Development, LLC, and International Land Development Corporation, Defendants-Appellants; Robert Fontaine Jr. and Anthony Casaccio, Judgment Debtors-Appellants; IMC Mortgage Servicing Corporation, Intervenor-Appellant). |
| District & No. | Second District<br>Nos. 2-20-0108, 2-20-0109 cons. |
| Filed | April 22, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 10-CH-6692; the Hon. Robert Gibson, Judge, presiding. |
| Judgment | No. 2-20-0108, Affirmed.<br>No. 2-20-0109, Appeal dismissed. |

Counsel on
Appeal

Michael Resis and Thomas P. Scherschel, of SmithAmundsen LLC, and Eugene S. Kraus and Miles V. Cohen, of Scott & Kraus, LLC, both of Chicago for appellants.

William J. McKenna Jr. and Andrew T. McClain, of Foley & Lardner LLP, of Chicago, for intervenor-appellant.

Brian T. Bedinghaus, of Roetzel & Andress, LPA, of Chicago, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1    This case stems from a commercial mortgage foreclosure case against the defendants, the mortgagor, IRED Elmhurst, LLC (IRED Elmhurst), and two guarantors, International Real Estate Development, LLC (IRED), and International Land Development Corporation (ILDC). Following the foreclosure, the trial court entered judgment against the guarantors, IRED and ILDC. Thereafter, the plaintiff, Triumph Community Bank (Triumph), formerly known as The National Bank, as assignee of First Midwest Bank, successor in interest to the Federal Deposit Insurance Corporation, solely as receiver for First Du Page Bank, issued citations to discover assets upon the guarantors. Triumph subsequently filed a motion for entry of judgment against Robert Fontaine Jr. and Anthony Casaccio, two corporate officers of the guarantors, for violating the citations. The trial court granted the motion. IRED, ILDC, Fontaine, and Casaccio appeal from this order. Additionally, during the proceedings, IMC Mortgage Servicing Corporation (IMC) filed a petition to intervene. The trial court denied the petition. IMC appeals from that order. We consolidated the appeals. We affirm in part and dismiss in part.

¶ 2                    I. BACKGROUND
¶ 3    In November 2007, Triumph loaned $11,624,243 to IRED Elmhurst. The promissory note was secured by a construction loan agreement, a mortgage for a property in Elmhurst, and an assignment of rents and leases. Additionally, IRED and ILDC executed a guaranty of payment on the note, guaranteeing performance and prompt payment of IRED Elmhurst's obligations.

¶ 4    In November 2010, Triumph filed a three-count complaint for foreclosure and other relief related to the loan documents at issue. Count I was against IRED Elmhurst and sought to foreclose the mortgage. Counts II and III were against IRED and ILDC and sought to recover on the guaranty.

¶ 5        In May 2011, Triumph filed a motion for summary judgment. The trial court granted Triumph's motion for summary judgment on all three counts of the complaint and entered a judgment for foreclosure and sale. The sheriff conducted the foreclosure sale, and Triumph was the successful bidder. Thereafter, the trial court entered an order approving the sale and entered a deficiency judgment against IRED Elmhurst in the amount of $8,527,840. In January 2012, the trial court entered a written order approving the court-appointed receiver's final report, discharging the receiver, and striking all future dates.

¶ 6        In February 2014, Triumph filed a motion to reopen the case and to enter a judgment on counts II and III of the complaint in the amount of $8,527,840.50. Following a hearing, the trial court stated that the final order in the case was the order approving the foreclosure sale. The trial court stated that it lacked jurisdiction to reopen the case more than two years after the final order. The trial court thus denied the motion. Thereafter, Triumph filed a timely notice of appeal.

¶ 7        On appeal, this court held that the trial court erred in denying Triumph's motion to reopen the case. See *First Midwest Bank v. IRED Elmhurst, LLC*, 2014 IL App (2d) 140456-U, ¶ 24. We concluded that the trial court did not lack jurisdiction, even after the entry of the order approving the foreclosure sale, because there was never a final judgment entered on counts II and III of the complaint. *Id.* ¶ 17. We thus reversed and remanded the matter for additional proceedings. *Id.* ¶ 26.

¶ 8        In December 2015, based on the guaranty, the trial court (Judge Bonnie Wheaton) entered judgment against IRED and ILDC jointly and severally in the amount of $2,131,960.

¶ 9        On January 25, 2016, Triumph issued citations to discover assets upon IRED and ILDC. The citations were served upon CT Corporation System, as registered agent for IRED and ILDC. The citations contained a restraining provision, pursuant to section 2-1402(f)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402(f)(1) (West 2014)), prohibiting IRED and ILDC, or anyone acting on their behalf or under their control, from allowing any transfer or other disposition of any property that was not exempt from the guaranty judgment. The citations were set for a return date on March 10, 2016, and were continued several times by the parties' agreement. On March 29, 2017, the trial court granted Triumph's motion to substitute counsel and continued the citations until April 19, 2017.

¶ 10        On April 19, 2017, the citations were dismissed because Triumph's attorney did not appear in court for the status hearing. Two days later, Triumph filed a motion, pursuant to section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 2016)), to vacate the dismissal and reinstate the citations. At an April 25, 2017, hearing, Triumph explained that its absence at the court hearing on April 19 was the result of a documenting error. Counsel for IRED and ILDC objected, noted that the matter was within the court's discretion, and requested costs and fees for appearing in court on April 19. The court granted the motion to vacate the April 19 order, reinstated the citations, awarded IRED and ILDC's counsel reimbursement for one hour of attorney time, and reset the citations for status.

¶ 11        Thereafter, the trial court granted Triumph leave to serve additional requests for documents. By mid-April 2018, Triumph received most necessary documents, including bank statements and three organizational structure charts. The bank statements showed that, between January 25, 2016 (when the citations were issued), and February 28, 2018, at least $1,270,330 had been transferred through the operating accounts of IRED and ILDC. According to the organizational charts, IRED was the parent company of a family of real estate investment and

development companies. One of IRED's subsidiaries was Washington Properties, LLC, which, as of August 2011, was the parent company to ILDC.

¶ 12 On June 7, 2018, Fontaine appeared for a citation examination on behalf of IRED and ILDC. Fontaine testified that he was the treasurer of IRED and ILDC and that he held that position since about October 2011. He testified that Casaccio was the president of IRED and ILDC. They were elected to those positions by IRED's board. They held those positions throughout the citation proceedings. Fontaine testified that all bank account transfers and written checks required two signatures for authorization. He and Casaccio were the only two authorized signatories for the bank accounts of IRED, ILDC, and each of the IRED subsidiaries. Fontaine testified that, at the time the citation was issued to IRED, IRED was indebted to IMC, IRED's secured lender, in excess of $20 million.

¶ 13 Fontaine testified regarding a particular series of transfers involving IRED and its subsidiaries. One of the direct subsidiaries, Midwest Residential Rehab, LLC (Midwest Rehab), was a limited liability company authorized to establish a series of LLCs that would each purchase, develop, and sell for profit one piece of real property. One of Midwest Rehab's series of LLCs was an entity named Series E. Series E purchased a parcel of real estate in 2015, developed it, and sold it in April 2017. International Montgomery, LLC (International Montgomery), was an indirect subsidiary of IRED. International Montgomery was the record owner of real property located in Montgomery, Illinois, for which it would collect rent proceeds.

¶ 14 Regarding a transaction that ultimately resulted in a payment to a general contractor for the Series E development project, Fontaine acknowledged the following transfers. In August 2016, International Montgomery transferred $210,000, money it received as rent proceeds, to International Development Ventures, LLC (IDV). IDV then transferred that amount to IRED, which transferred that amount to Midwest Rehab, which then transferred that amount to Series E, which then paid a contractor. When asked why the funds did not just go directly from International Montgomery to Series E, Fontaine stated that they followed the ownership structure. Each transfer was either an extension of a loan or a repayment of a loan from one entity to the next. When asked why the initial transfer from International Montgomery to IDV skipped over International Montgomery's direct parent, Ogden Hill, LLC, Fontaine explained that, before he started, there were loans directly from IDV to International Montgomery, so they continued to follow that process for record keeping purposes. Fontaine testified that year-end financial statements showed what each entity owed or was owed by another entity.

¶ 15 In an affidavit, Fontaine stated that IRED did not own any real estate when or after the citations were issued. Its account balance at the time was $29,473.48. In addition, after the citations were issued, IRED was not generating income and its only revenue was in April 2016 from Chicago Title, as miscellaneous income from an old project in the amount of $26,226.51. As for ILDC, at the time the citations were issued, it had an account balance of $1070.03. ILDC was not generating any income and did not own any property. IRED and ILDC were no longer conducting business. Fontaine noted that Triumph identified 70 transfers through IRED's and ILDC's accounts while the citations were pending. Of that amount, 63 were transfers through IRED's operating account and 7 were through ILDC's operating account. Most of the transfers through IRED's account were for the sole purpose of immediately sending the funds to another entity. Only 20 of the transfers were made with funds that belonged to IRED. The aggregate amount of those transfers was just over $55,000. The seven

transfers through ILDC's account, totaling about $5000, were either available funds already in the account or proceeds from a loan made to ILDC to maintain its corporate status and pay its legal bills. The funds did not belong to ILDC.

¶ 16     On July 20, 2018, Triumph filed a motion for entry of judgment against Fontaine and Casaccio, seeking to hold them personally liable for their role in transferring over $1.2 million from IRED's and ILDC's operating accounts during the pendency of the citation proceedings and in violation of the citations' restraining provision. The motion alleged that $1.265 million had been transferred out of IRED's account and $5200 out of ILDC's account. The motion was served on counsel for IRED and ILDC but not on Fontaine or Casaccio, individually.

¶ 17     On August 31, 2018, IRED and ILDC filed a response, arguing that the majority of the funds transferred were not subject to the citations. In support, they attached Fontaine's affidavit, wherein he stated that the funds transferred from IRED's account did not belong to IRED and that the funds in ILDC's account were proceeds from a loan made to ILDC to maintain its corporate status and pay its legal bills.

¶ 18     On October 3, 2018, a hearing commenced on Triumph's motion. Triumph argued that the funds transferred through IRED and ILDC were not gratuitous pass-throughs for accounting purposes. Rather, the transfers were for legitimate business purposes. As a result, Triumph argued that the funds were available for collection. Counsel for IRED and ILDC argued that, when the citations were issued, IRED was not an operating entity, had no sources of income, and had no means to acquire assets. The only income IRED received while the citations were pending was a $26,000 check from Chicago Title for an old project. The funds that were transferred through IRED were not its assets and never belonged to IRED. Rather, the funds belonged to IRED's subsidiaries, and IRED thus had no rights to the funds. Following argument, the trial court entered an order (October 2018 order) finding that, when the funds at issue were transferred into the operating accounts of IRED and ILDC, those funds became the property of IRED and ILDC and that transferring the funds out of the operating accounts was a violation of the citations' restraining provision.

¶ 19     On October 24, 2018, IMC filed a petition to intervene as of right. IMC stated that IRED had executed a note in its favor on April 30, 2015, in the principal sum of $20,129,516.96. The note was a consolidation of seven prior notes under which IRED was the borrower in default and IMC's predecessors in interest were the lenders. The note required that 10% of each sale of real estate assets of Midwest Rehab would be paid to IMC as principal reduction payments. IMC argued that it had a right to intervene to have its alleged superior lien interest in IRED be tried and determined. IMC argued that its interest in the case was not adequately represented by the existing parties and that further action against IRED, ILDC, Fontaine, or Casaccio could adversely affect its rights and interests.

¶ 20     On November 2, 2018, IRED filed a motion to reconsider the October 2018 order. IRED argued that the funds transferred were subject to IMC's prior perfected security interest and under the control of IMC. Thus, the funds could not have been subject to the citations' restraining provision.

¶ 21     On January 3, 2019, following a hearing, the trial court denied IRED's motion to reconsider. The trial court found that priority as to the funds was not at issue. Any arguments as to priority were premature because Triumph had not yet moved to recover the funds from IRED or IMC. The trial court stated that the issue was only whether Fontaine and Casaccio had complied with the provisions of the citation lien. The trial court also denied IMC's petition

to intervene. The trial court found the petition premature because Triumph had not yet moved to recover any of the funds at issue, and thus lien priority was not at issue.

¶ 22 After issuing its ruling (January 2019 order), the trial court inquired as to whether Fontaine and Casaccio had filed an appearance. IRED argued that the two had to be served to be brought into the case. Triumph argued that the two were already before the court as officers of the corporations, IRED and ILDC. Triumph argued that the court's contempt powers gave it the authority to enter judgments and sanctions against corporate officers. Ultimately, however, Triumph agreed to serve Fontaine and Casaccio.

¶ 23 On January 17, 2019, Triumph served Fontaine and Casaccio with a petition for rule to show cause that it had filed against them. Pursuant to section 2-1402(f)(1) of the Code (*id.* § 2-1402(f)(1)) and Illinois Supreme Court Rule 277(h) (eff. Jan. 4, 2013), Triumph requested that judgment be entered against Fontaine and Casaccio in the amount of the transferred funds, $1.27 million, or that the court find them in contempt of court and impose a contempt sanction for that amount.

¶ 24 On June 27, 2019, following three motions for substitution of judge by Fontaine, IRED, and ILDC, the case was assigned to Judge Robert Gibson.

¶ 25 On August 16, 2019, Fontaine and Casaccio filed a response to the petition for rule to show cause. They argued that they were not liable for the transfers because, pursuant to Illinois Supreme Court Rule 277(f) (eff. Jan. 4, 2013), the citations had expired six months after Fontaine's June 7, 2018, citation examination and a contempt order after termination would be improper. They also argued that they could not be held liable because the transferred funds were subject to IMC's prior perfected security interest. Finally, they argued that they could not be held in contempt because they were legally unable to comply with the citations' restraining provision, as the funds at issue did not belong to IRED or ILDC.

¶ 26 On September 26, 2019, following oral argument, the trial court (Judge Gibson) granted Triumph's July 2018 motion for entry of judgment and entered judgment against Fontaine and Casaccio, jointly and severally, in the amount of the subject transfers, $1.27 million. The trial court noted that section 2-1401(f)(1) did not contain an exception that made pass-through funds, for accounting purposes, exempt from a citation. The trial court stated that its ruling made Triumph's January 2019 petition for rule to show cause moot. In addition, the trial court terminated the citations issued to IRED and ILDC and found, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that there was no just reason to delay enforcement or appeal of its order.

¶ 27 On October 25, 2019, Fontaine and Casaccio filed a motion to reconsider. They argued that the entry of judgment against them personally was improper because they were not third parties under section 2-1402(f)(1) of the Code. They argued that, because they were not served with "third-party" citations, they were not third parties within the meaning of the statute and that the trial court had the authority only to grant the alternate relief of finding them in indirect civil contempt. On January 8, 2020, following a hearing, the trial court denied the motion to reconsider (January 2020 order). The trial court found that Fontaine and Casaccio were not the judgment debtors (on the foreclosure judgment) and that thus they were third parties within the meaning of the statute.

¶ 28 Fontaine and Casaccio filed a timely notice of appeal from the January 2020 order, in which IRED and ILDC subsequently joined. Those appeals were docketed in this court as No. 2-20-0108. IMC also filed a timely notice of appeal from the January 2019 order denying its petition

to intervene. That appeal was docketed in this court as No. 2-20-0109. On April 30, 2020, this court granted the parties' joint motion to consolidate these appeals for briefing, argument, and decision.

¶ 29                                    II. ANALYSIS

¶ 30                                A. Appeal No. 2-20-0108

¶ 31     Fontaine, Casaccio, IRED, and ILDC (the appellants) first contend on appeal that the trial court erred in reinstating the citations on April 25, 2017. They argue that the trial court was without authority to vacate the April 19, 2017, dismissal because the citations automatically terminated pursuant to Rule 277(f), when they were dismissed without extension.

¶ 32     Supplementary proceedings automatically terminate six months after the cited party's first appearance, unless the trial court grants an extension. Rule 277(f) provides:

> "A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise." Ill. S. Ct. R. 277(f) (eff. Jan. 4, 2013).

¶ 33     The appellants' contention is both forfeited and without merit. After the citations were dismissed on April 19, 2017, Triumph filed a motion to vacate the default judgment pursuant to section 2-1301(e) of the Code (735 ILCS 2-1301(e) (West 2016)). Section 2-1301(e) states, "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." *Id.* It is well settled that a trial court retains the inherent power to vacate any of its judgments within 30 days upon good cause shown. *Trojan v. Marquette National Bank*, 88 Ill. App. 2d 428, 437-38 (1967). Whether to vacate a judgment remains within the sound discretion of the trial court. *In re Marriage of Romashko*, 212 Ill. App. 3d 1018, 1024 (1991). We may reverse the trial court's decision on a motion to vacate where it abused its discretion or where a substantial injustice may otherwise result. *Rockford Housing Authority v. Donahue*, 337 Ill. App. 3d 571, 574 (2003).

¶ 34     At the hearing on Triumph's section 2-1301(e) motion, Triumph explained that it missed the April 19 hearing date because of a documenting error. In response, the appellants did not argue that the citations expired under Rule 277(f) and that, therefore, the trial court was without discretion to reinstate the citations. Rather, they stated only that, while they objected, they "realize[d] that the court will do what it will." Their only request was to be reimbursed for costs and fees for attending the April 19 hearing. As the appellants did not raise their Rule 277(f) argument below, it is forfeited. See *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 127 (2010) (issues not raised before the trial court are forfeited). Even absent forfeiture, we cannot say that the trial court abused its discretion in vacating the dismissal of the citations. Triumph provided a reasonable explanation for failing to appear in court on April 19, and its motion to vacate was timely filed several days later. Finally, both before the dismissal and after

the dismissal was vacated, the parties agreed to continue the citations. Thus, the citations did not automatically terminate under Rule 277(f).

¶ 35    The appellants' next contention on appeal is that the trial court erred in finding that the subject account transfers violated the citations' restraining provision. The appellants argue that the majority of the transfers did not violate the citation restraining provision, because the pass-through funds never belonged to IRED or ILDC. They argue that IRED and ILDC were not legally entitled to do anything with the subject funds other than make the necessary accounting transfers.

¶ 36    To answer the question presented, we must determine whether the alleged pass-through funds deposited into IRED and ILDC's operating accounts were property "belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her" (735 ILCS 5/2-1402(f)(1) (West 2018)), such that the subsequent disbursement of those proceeds constituted a violation of the citation restraining provisions. Whether the appellants violated the citations is a matter of statutory interpretation, and our review is *de novo*. *National Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, ¶ 20. Moreover, "[w]e review *de novo* a trial court's ruling in supplementary proceedings where the trial court did not conduct an evidentiary hearing or make factual findings." *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 15.

¶ 37    In construing a statute, our task is to "ascertain and give effect to the legislature's intent." (Internal quotation marks omitted.) *First Bank of Highland Park v. Sklarov*, 2019 IL App (2d) 190210, ¶ 23. The best indicator of the legislature's intent is the plain language of the statute. *Id.* We give undefined terms their ordinary and popularly understood meanings. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15. When the statute's language is clear, we apply it as written, without resort to extrinsic aids of statutory construction. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003).

¶ 38    Under Illinois law, a judgment creditor may

> "prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment *** and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." See 735 ILCS 5/2-1402(a) (West 2018).

During the course of supplementary proceedings, a judgment creditor may serve a citation to discover assets on a third party, requiring it to freeze assets. *Id.* § 2-1402(f).

¶ 39    To protect assets from improper transfers, Illinois permits a citation to discover assets to include a restraining provision that "prohibit[s] the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom *** until the further order of the court or the termination of the proceeding, whichever occurs first." *Id.* § 2-1402(f)(1). In the present case, the citations issued to IRED and ILDC contained language similar to the restraining provision in the statute.

¶ 40    "The purpose underlying the restraining provision of section 2-1402 is to provide 'a means of forestalling the judgment debtor or a third party from frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets, *** in the possession of [the] debtor or of a third party.'" *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d

307, 314 (1989) (quoting *Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.*, 100 Ill. App. 3d 360, 362 (1981)). "The provisions of section 2-1402 are to be liberally construed \*\*\*." *Schak v. Blom*, 334 Ill. App. 3d 129, 133 (2002).

¶ 41    "[T]he only relevant inquiries in supplementary proceedings are (1) whether the judgment debtor is in possession of assets that should be applied to satisfy the judgment or (2) whether a third party is holding assets of the judgment debtor that should be applied to satisfy the judgment." *Id.* The Illinois legislature has carved out two exceptions to the section 2-1402(f)(1) restraining provision. The first exception pertains to transfers of property "exempt from the enforcement of a judgment therefrom." 735 ILCS 5/2-1402(f)(1) (West 2018). The second exception applies to property of the judgment debtor in the hands of third parties that is in excess of an amount that is "double \*\*\* the balance due sought to be enforced by the judgment creditor." *Id.*

¶ 42    In resolving the issue before us, we find *City of Chicago v. Air Auto Leasing Co.*, 297 Ill. App. 3d 873 (1998), instructive. In *Air Auto*, the citation respondent, who was served personally and in his capacity as a corporate officer of the defendant judgment debtors, continued to pay ordinary business expenses from the debtors' primary checking and payroll accounts even after citations to discover assets, which contained the standard restraining provision, were served upon him. *Id.* at 876. Thereafter, the plaintiff city filed a petition for rule to show cause why the respondent should not be held in contempt. *Id.* The trial court denied the petition, finding that the citations did not bar the respondent from continuing to pay expenses from the debtors' funds. *Id.* at 877.

¶ 43    On appeal, the reviewing court reversed the trial court, holding that the transfers violated the citations' restraining provision. *Id.* at 879-80. The reviewing court noted that the transfers did not fall within either exception to section 2-1402(f)(1), as those exceptions did not include transfers made "in the ordinary course of business." *Id.* at 878. In so ruling, the reviewing court stated:

> "Since the legislature chose to include two express exceptions to section 2-1402(f)(1), we refuse to find an additional exception where the legislature did not create one. See *Welch v. Johnson*, 147 Ill. 2d 40, 52, 588 N.E.2d 1119, 1124 (1992) ('It is a fundamental principle of statutory construction that the express mention of one thing in a statute excludes all other things not mentioned'). Regardless, an exception made for transfers in the ordinary course of business would be contrary to the purpose of the citation process since service of a citation to discover assets is clearly designed to ascertain and freeze the judgment debtor's nonexempt assets, up to an amount double the balance due on the judgment. See 735 ILCS 5/2-1402(f)(1) (West 1996)." *Id.* at 878-79.

¶ 44    In the present case, the appellants do not argue that the transferred funds at issue fell within either exception to the statute. They argue only that the funds "did not belong to" IRED and ILDC. However, the citation order did not ask the appellants to independently assess any priority interests related to the operating accounts, such as those of IMC, and act as they deemed proper. See *Vendo Co. v. Stoner*, 108 Ill. App. 3d 51, 57-58 (1982) (statute makes "no allowance for the unilateral disposition of such property"). Instead, the statute clearly requires the judgment debtor to hold the property in its possession in status quo until the judgment creditor's rights can be determined. *Kirchheimer*, 100 Ill. App. 3d at 362. This case is similar to *Air Auto*, in that the appellants are arguing that the transfers were made in the ordinary

course of business for accounting reasons and that, even though the funds were transferred in and out of IRED's and ILDC's operating accounts, the funds never belonged to them. However, similar to the holding in *Air Auto*, we hold that the statute does not contain an exception for fund transfers that are an accounting pass-through or only for accounting purposes. Fontaine's testimony describing how funds are transferred from subsidiary to parent and recorded as either a loan or a repayment of a loan describes regular business activity, as in *Air Auto*. As such, once the funds were transferred into IRED's and ILDC's operating accounts, the funds "belonged" to them within the meaning of section 2-1402(f)(1) of the Code and the transfer of those funds out of the operating accounts constituted a violation of the citations. *Air Auto*, 297 Ill. App. 3d at 878-79; see also *Kauffman*, 2015 IL App (2d) 150285, ¶ 30 (citation violated where funds were transferred out of a trust account that was in the lawyer-judgment debtor's own name because, in addition to client funds, the account could also have held funds belonging to the lawyer or law firm); *Vendo*, 108 Ill. App. 3d at 56 (citation respondent bank violated citation restraining provision when it liquidated treasury notes that it held as a security interest even though it was entitled to priority over the lien creditor and it would have been entitled to a set-off if the creditor had commenced garnishment proceedings).

¶ 45 The appellants rely on *In re Fridge*, 239 B.R. 182 (Bankr. N.D. Ill. 1999), in arguing that they did not violate the restraining provision, because the funds did not belong to IRED and ILDC but rather came from third parties. In *Fridge*, the bankruptcy court found that money used to pay filing fees for a bankruptcy petition did not violate a citation's restraining provision because, in part, the money came from a third party (the debtor's wife). *Id.* at 189. We find the appellants' reliance on *Fridge* unpersuasive. First, bankruptcy court opinions are not binding precedent in Illinois state courts. See *Ray Schools-Chicago-Inc. v. Cummins*, 12 Ill. 2d 376, 381 (1957). Moreover, the cited finding in *Fridge* is also not binding because it was merely *dicta*. *Geer v. Kadera*, 173 Ill. 2d 398, 414 (1996). The main issue in *Fridge* was whether the judgment creditor had violated the automatic stay by pursuing contempt sanctions against the judgment debtor in state court after the debtor filed his bankruptcy petition. *Fridge*, 239 B.R. at 190-91. The finding that there was no violation of the citation's restraining provision was an incidental remark offered by the court as it described the basis for the contempt proceeding in state court. The finding was *dicta* because it was unnecessary to the determination of whether the automatic stay was violated. Thus, it lacked the force of adjudication. See *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 30.

¶ 46 The appellants' next contention on appeal is that the trial court erred in finding Fontaine and Casaccio personally liable for violating the citations' restraining provision. They argue that Fontaine and Casaccio were not issued any citations, as the citations were issued only to IRED and ILDC. Thus, since Fontaine and Casaccio did not possess any assets of IRED and ILDC, they were not "third parties" within the meaning of section 2-1402(f)(1) (735 ILCS 5/2-1402(f)(1) (West 2018)) and thus could not be held personally liable. The appellants further argue that, pursuant to the statute, the only recourse against Fontaine and Casaccio would be a finding of contempt, not a personal judgment, and the appropriate remedy would be to order them to restore the funds to IRED and ILDC. The appellants therefore request that the matter be remanded for an evidentiary hearing on whether Fontaine and Casaccio should be held in contempt.

¶ 47 Triumph argues that this contention is forfeited. Triumph notes that, in response to the motion for entry of judgment and the petition for rule to show cause, the appellants never

argued that Fontaine and Casaccio could not be held personally liable for violating the citations because they were not third parties within the meaning of section 2-1402(f)(1). The first time the appellants raised the issue was in the motion to reconsider the entry of judgment against Fontaine and Casaccio. Triumph argues that, because the issue was raised for the first time in a motion to reconsider, the issue is forfeited.

¶ 48    It is well settled that the purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law. *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991). A party may not raise a new legal theory for the first time in a motion to reconsider. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36. Thus, legal theories and factual arguments not previously made are forfeited. See *Jones v. Live Nation Entertainment, Inc.*, 2016 IL App (1st) 152923, ¶ 29.

¶ 49    As Triumph notes, the first time the appellants argued that Fontaine and Casaccio were not third parties within the meaning of section 2-1402(f)(1) was in their motion to reconsider the entry of judgment against them. Prior to that, the appellants argued that Fontaine and Casaccio could not be held liable for the fund transfers because (1) the money did not belong to IRED and ILDC, (2) the citations had terminated under Rule 277(f), and (3) the transferred funds were subject to IMC's prior perfected security interest. Accordingly, the present contention is forfeited. *Id.* Forfeiture, however, is a restriction on the parties, not this court; we may overlook forfeiture, and we do so here. *Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill. App. 3d 1003, 1028 (2009) ("forfeiture is a limitation on the parties, not on the court, and the court may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent").

¶ 50    Turning to the merits, the issue is whether Fontaine and Casaccio can be held personally liable for violating the citations' restraining provision. In making this determination, we find *Kennedy v. Four Boys Labor Services, Inc.*, 279 Ill. App. 3d 361, 364 (1996), instructive. In that case, a judgment was entered in favor of the plaintiff and against the defendant corporation for breach of an employment contract. *Id.* The plaintiff initiated a supplementary proceeding to recover certain assets transferred by the corporation's sole director after the state involuntarily dissolved the corporation. *Id.* at 364-65. The trial court held that the transfers were fraudulent and ordered the director to turn over the proceeds received from the fraudulent transfers. *Id.* at 365. When the director did not comply with this order, the trial court, pursuant to Rule 277(h), entered judgment against the director for the full amount of the underlying judgment. *Id.* Rule 277(h), which governs section 2-1402 supplementary proceedings, provides for sanctions for the violation of a citation and states as follows:

> "Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt. *** The court may also enforce its order against the real and personal property of that person." Ill. S. Ct. R. 277(h) (eff. Jan. 4, 2013).

¶ 51    On appeal, the director argued that Rule 277(h) did not provide the court with the ability to enter a money judgment against her and that, as a prerequisite to the entry of a sanction pursuant to Rule 277(h), the trial court was required to find her in contempt. *Kennedy*, 279 Ill. App. 3d at 371. This court rejected those arguments, stating that

"Rule 277(h) does not require a finding of contempt; rather, it merely states that the court *may* punish a person who fails to obey an order by finding that person in contempt. [Citation.] As such, a finding of contempt is not a prerequisite to a sanction pursuant to Rule 277(h)." (Emphasis in original.) *Id.*

Thus, this court held that, pursuant to Rule 277(h), the trial court had the discretion as to the nature of the sanction to impose for violation of the turn-over order and that it was not an abuse of discretion for the trial court to enter a money judgment against the director for the entire amount of the underlying judgment. *Id.*

¶ 52    Based on our decision in *Kennedy*, we need not reach an interpretation of section 2-1402(f)(1) to determine whether Fontaine and Casaccio were "third parties" or whether the trial court's sanction was appropriate under the statute. The citations issued to IRED and ILDC prohibited anyone acting on their behalf from allowing any transfer or other disposition of any property subject to the citations' restraining provision. As we determined above, the restraining provision was violated when Fontaine and Casaccio authorized the fund transfers at issue. Under Rule 277(h), the trial court had the discretion as to the nature of the sanction to impose against Fontaine and Casaccio for violating the restraining provision and a finding of contempt was not a prerequisite to imposing a sanction. *Id.* We thus affirm the sanction imposed against Fontaine and Casaccio on this basis. *Id.*; see also *Taylor, Bean, & Whitaker Mortgage Corp. v. Cocroft*, 2018 IL App (1st) 170969, ¶ 60 (reviewing court may affirm on any basis appearing in the record, regardless of whether the trial court relied on that basis or its reasoning was correct).

¶ 53                          B. Appeal No. 2-20-0109

¶ 54    On appeal, IMC argues that the trial court erred in denying its petition to intervene. Triumph argues that IMC's appeal is moot because the supplementary proceedings were terminated when the trial court entered judgment against Fontaine and Casaccio.

¶ 55    The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 523 (2001). An appeal is considered moot where it presents no actual controversy or where the issues have ceased to exist. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997). The test for mootness is whether the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. *Davis v. City of Country Club Hills*, 2013 IL App (1st) 123634, ¶ 10. A moot appeal must be dismissed. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 21.

¶ 56    In the present case, the trial court terminated the citations after it entered judgment against Fontaine and Casaccio. Because we affirm that determination, we cannot grant IMC any effectual relief, as there is no longer a supplementary proceeding in which to intervene. The appeal is thus dismissed as moot. *Id.*

¶ 57                          III. CONCLUSION

¶ 58    For the reasons stated, in appeal No. 2-20-0108, the judgment of the circuit court of Du Page County is affirmed. In appeal No. 2-20-0109, we dismiss the appeal as moot.

¶ 59        No. 2-20-0108, Affirmed.

¶ 60        No. 2-20-0109, Appeal dismissed.